# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION
### AT JACKSON

| | |
|---|---|
| **DWIGHT MILLER** | ) |
| **PETITIONER,** | ) |
| | ) |
| **V.** | ) CASE NO. _____ |
| | ) |
| **CHERRY LINDAMOOD,** | ) |
| **RESPONDENT,** | ) |

---

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

---

Dwight Miller #266927
S.C.C.F; P.O. Box #279
Clifton Tennessee  38425

**RECEIVED**

NOV 2 0 2015

CLERK, U.S. DIST. COURT
WESTERN ... ... N

# TABLE OF CONTENTS

PETITION:................................................................................................................................1

PROCEDURAL HISTORY OF THE CASE:................................................................................5

JURISDICTION AND TIMELINESS OF PETITION:...............................................................6

STANDARD OF REVIEW:.......................................................................................................8

Previously Determined Standard:.............................................................................................8

Procedural Gate way Established by Martinez and Actual Innocence...........................................9

LIST OF SUPPORTING GROUNDS:.....................................................................................13

PROCEDURALLY DEFAULTED 28 U.S.C. § 2254 CLAIMS BROUGHT PURSUANT TO MARTINEZ V. RYAN, 132 S. Ct., 1309 (2012) & SUTTON V CARPENTER 2014 U.S. APP. LEXIS 5101 (6th CIR.)...........................................................................................................13

CLAIMS BROUGHT PURSUANT TO THE CONTRARY AND UNREASONABLE APPLICATION STANDARD UNDER 28 U.S.C. § 2254(D)(1) & (2):................................................................24

STATEMENT OF FACTS AND RELEVANT EVIDENCE PRESENTED IN THE STATE COURT PROCEEDINGS, ..................................................................................................................26

I. SPECIFIC CLAIMS (I)-(VIII) THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD: -Failure to properly introduce Exculpatory Witness Testimony..........31

II. SPECIFIC CLAIMS (IX)-(XVI) THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD: -Prosecutorial Misconduct and Conflict of Interest............................105

III. SPECIFIC CLAIMS (XVII)-(XXVI) THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD: Improper Jury instructions and Closing Arguments ...........................155

IV. SPECIFIC CLAIMS (XXVII)-(XXVIII) THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD:-failure to properly challenge prejudicial admission of prior bad acts 196

V. SPECIFIC CLAIMS (XXIX)-(XXX) THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD: Failure to properly inform Plaintiff of the terms of a plea agreement ..............................................................................................................................205

VI. SPECIFIC CLAIMS (XXXI)-(XXXVIII) THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD:-Failure to Call Expert Witnesses........................................................211

VII. SPECIFIC CLAIMS (IXL)-(XLII) THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD: Failure's with Respect to witness Kathy Blackwell ...........................239

VIII. SPECIFIC CLAIMS (XLIII)-(XLIV) THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD: Failures with respect to witness Nina Champion ..............................251

IX. SPECIFIC CLAIMS (XLV)-(XLVI) THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD: -DEFICIENT TRIAL PERFORMANCE WITH RESPECT TO JURY COMPOSITION AND INTEGRITY:..............................................................................................256

X. SPECIFIC CLAIMS (XLVII)-(LII) ; THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD: -State Court reached an unreasonable Determination in light of the

facts and evidence:.................................................................................................................................261

XI. SPECIFIC CLAIM (LIII) THAT JUSTIFIES AN EVIDENTIARY HEARING AND EXPANDING THE RECORD: -Petitioner Miller is actually innocent of the April 20th, 1995 Murder of Mr. Donald Rice:...............................................................................................................................268

CONCLUSION:..........................................................................................................................................268

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT

**Petitioner:**
Dwight Miller

DOCKET No:_____

V.

**Respondent:**
Cherry Lindamood

The Attorney General of the State of Tennessee
HERBERT H. SLATERY III

## PETITION:

Mailing address of petitioner :   S.C.C.F; P.O. Box #279
Clifton Tennessee 38425

Place of Confinement :     South Central Correctional Facility

Dept of Corrections Number :   266927

1.     Name and location (city and county) of court which entered the judgment of conviction and sentence challenged:   Haywood County Circuit Court

2.     Date of judgment of conviction :     August 20th, 2001

3.     Case Number:     2401

4.     Length of sentence:     Life in prison

1

5. Offense Convicted of:    One Count of First Degree Premeditated Murder

6. Petitioner's plea was  Not Guilty on all counts.

7. Petitioner had a Jury trial.

8. Petitioner did not  testify at the trial.

9. Petitioner appealed the judgment of conviction.

10. Petitioner First appealed to the Criminal Court of Appeals.

    a. Result:        They affirmed Petitioner's Judgment of Convictions; (see State of Tennessee vs. Dwight Miller , W2001-03095-CCA-R3-CD)

    b. Date of result:        January 14, 2004

    c. Grounds raised on appeal:

        (i) evidence was insufficient to sustain the conviction

    d. Petitioner then appealed to the Tennessee State Supreme Court

    (2) Result:     The Court denied Petitioner's T.R.A.P. 11 Application for  permission to appeal.

    (3) Date of result:  May 10, 2004

    (4) Grounds raised on appeal:

        I.    The appeals court misapprehended both a critical fact and a critical  point of law, when it found that  the evidence was sufficient to sustain the conviction.

11. Petitioner did not file a petition for certiorari in the Untied States Supreme Court.

12. In addition to the direct appeal listed above, Petitioner has also  previously filed a Petition for Post conviction relief in the Circuit Court for Haywood County on

February 22nd, 2005.

13. Petitioner was subsequently granted relief in the form of a delayed appeal which resulted in a bifurcated Post Conviction/ delayed appeal.

14. Petitioner's First delayed appeal to the Criminal Court of Appeals, was adjudicated in the following manner:

    a. Result: They affirmed Petitioner's Judgment of Convictions; (see State of Tennessee vs. Dwight Miller , W2011-00447-CCA-R3-CD)

    b. Date of result: January 28th, 2013

    c. Grounds raised on appeal:

        (i) the trial Court erred in failing to grant a mistrial after a bomb threat.

        (ii)The trial court erred in allowing the prior testimony of an unavailable witness to be read into the record.

    d. Petitioner then appealed to the Tennessee State Supreme Court

    (2) Result: The Court denied Petitioner's T.R.A.P. 11 Application for permission to appeal.

    (3) Date of result: June 13, 2013

    (4) Grounds raised on appeal:

        i) The appeals court misapprehended both a critical fact and a critical point of law, when it found that trial Court did not err in failing to grant a mistrial after a bomb threat.

        ii) The appeals court misapprehended both a critical fact and a critical point of law, when it found that trial Court properly allowed the prior testimony of an unavailable witness to be read into the record.

15. Upon completion of the above-mentioned delayed appeal, Petitioner had a evidentiary hearing on his Post Conviction Petition, in the Circuit Court for

Haywood County.

16. At the said hearing, despite having included many pro se claims in the original and Amended Petitions, Post conviction counsel Michael J Banks, only argued and presented one claim, at the August 19th, 2014 evidentiary hearing.

17. The claim was addressed and adjudicated as follows:

   a)   Claim presented: Trial Counsel Perianne S. Houghton was ineffective for failing to call three defense  witnesses; to wit:  Mrs. Rosa Carney,  George Liggons, and Lucille Miller

   b)   Post Conviction court denied Relief on September 25th, 2014.

18. Petitioner appealed the denial of his post Conviction petition, to the Tennessee Court of Criminal Appeals, and it was  adjudicated in the following manner:

   a.  Result:       They affirmed the Judgment of  the Post Conviction court; (see  Dwight Miller vs. State of Tennessee,  W2014-02093-CCA-R3-PC)

   a.  Date of result:      June 24th,  2015

   b.  Grounds raised on appeal:

      (i) Trial Counsel Perianne S. Houghton was ineffective for failing to call three defense witnesses; to wit:  Mrs. Rosa Carney, George Liggons, and Lucille Miller

   c.  Petitioner then appealed to the Tennessee State Supreme Court

   (2)  Result:     The Court denied Petitioner's T.R.A.P. 11 Application for  permission to appeal.

   (3)  Date of result:  October 16th, 2015

   (4)  Grounds raised on appeal:

      i)       The appeals court misapprehended both a critical fact and a critical

4

point of law, when it found that the trial Court did not err in failing to grant post conviction relief.

## PROCEDURAL HISTORY OF THE CASE:

19. Petitioner Miller was indicted for one count of first degree premeditated murder in July 1995 in a single count indictment, for the murder of Mr. Donald "Dono" Rice, committed during the early morning of Thursday April 20th, 1995 in Haywood County, Tennessee.

20. Petitioner was initially tried before a jury in August 1996 and found guilty as charged.

21. On direct appeal, the Tennessee Court of Criminal appeals reversed the Defendant's conviction and remanded the matter for a new trial. See State v. Dwight Miller, No. 02C01-9708-CC-00300, 1998 Tenn. Crim. App. LEXIS 1315, 1998 WL 902592, at *1 (Tenn. Crim. App. Dec. 29, 1998) ("Miller I").

22. The Petitioner was tried before a jury a second time in August 2001 and again found guilty as charged.

23. Judgment was entered on August 20, 2001, and the Defendant filed a motion for new trial on September 28, 2001, raising, inter alia, the trial court's refusal to grant a mistrial following a bomb threat and the trial court's admission of the prior testimony of an unavailable witness.

24. After a hearing, the trial court denied the motion for new trial by a written order

5

filed on November 20, 2001.

25. Petitioner then filed a notice of appeal on December 20, 2001, however because the motion for new trial was not filed timely, the Court of Criminal Appeals addressed only the sufficiency of the evidence and affirmed the Defendant's conviction. See State v. Dwight Miller, No. W2001-03095-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 32, 2004 WL 115374, at *1 (Tenn. Crim. App. Jan. 14, 2004) ("Miller II"). The Tennessee Supreme Court denied the Defendant's application for permission to appeal on May 10, 2004. (Id.)

26. Petitioner then Filed a Pro se petition for post conviction relief on February 22nd, 2005.

27. After an evidentiary hearing held on August 14th, 2014, and an order denying relief issued on September 25th, 2014, Petitioner appealed to the Court of Criminal appeals who affirmed the Post Conviction Court's denial of Post conviction relief on June 24th , 2015. (see Dwight Miller vs. State of Tennessee, W2014-02093-CCA-R3-PC)

28. Petitioner then filed a T.R.A.P. Rule 11 application for Permission to appeal to the Tennessee Supreme Court in August 2015.

## JURISDICTION AND TIMELINESS OF PETITION:

29. Petitioner avers that for the purposes of the one year statute of limitations

6

established by **28 U.S.C.§ 2244(d)(1)(A)**, more than one (1) year has **NOT** passed since the date of final action on Petitioner's direct appeal or state collateral attack proceedings, therefore the statute of limitations should not and does not bar any of Petitioner's claims in the instant petition.

30. A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from . . . the date on which the judgment became final by the conclusion of direct review . . . .28 U.S.C. § 2244(d)(1)(A).

31. Direct review, within the meaning of **§ 2244(d)(1)(A)**, does not conclude "until the availability of direct appeal to the state courts and to [the Supreme] Court has been exhausted." Jimenez, 555 U.S. at 119 (internal quotations and citations omitted).

32. Petitioner's direct appeal was not concluded until the Tennessee Supreme Court denied his application for permission to appeal on May 10, 2004.

33. In terms of calculating the one year statute of limitations, the Tennessee Supreme Court denied the Defendant's application for permission to appeal on May 10, 2004. (Id)., thus May 11, 2004 was the first day of Petitioner's one year period.

34. Petitioner then filed a Pro se petition for post conviction relief on February 22nd, 2005, which stopped the statute of limitations from running.

35.  During that time roughly 288 days had elapsed (i.e. May 11th, 2004 through February 22nd, 2005)

36.  Therefore, Petitioner would have had roughly 87 (eighty seven) days remaining on his one year statue of limitations, <u>once he received the decision</u> of the Tennessee State Supreme Court denying his <u>August 2015 T.R.A.P.</u> Rule 11 application for permission to appeal.

37.  Therefore the instant 28 U.S.C. § 2254 Habeas Petition is timely for the purposes of 28 U.S.C. § 2244(d).

## STANDARD OF REVIEW:

38.  Petitioner Miller avers that the claims being brought in the instant **28 U.S.C.§ 2254** Federal habeas petition fall under two general categories of claims:

> (i) those that have been preciously adjudicated by a state court and thus are subject to analysis under **28 U.S.C.§ 2254(d)(1) & (2)**; and
>
> (ii) those that are procedurally defaulted but are still subject to Federal habeas review under the procedural gateway established by (a) Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012); and (b) the actual innocence exception.

*Previously Determined Standard:*

39.  Pursuant to **28 U.S.C.§ 2254(d)(1) & (2):**

> ".... An application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

40. The former section 2254(d) has been superseded by 2254(d)(2)(2000), an analogous portion of the superseding statue continues to apply. In that the "state court's determination of factual issue deserves deference only if the state court 'adjudicated [issue] on the merits' and it evinces...unreasonable[ness]... in light of the evidence presented in the State Court proceeding..." Wiggins v. Smith, 539 U.S. 510, 530-531 (2003).

### *Procedural Gate way Established by Martinez and Actual Innocence*

41. In Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), the U.S. Supreme Court, announced a narrow exception to the Coleman decision's general rule. Coleman v. Thompson, 501 U.S. 722, 749-50, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). It allows post-conviction counsel's ineffectiveness to establish cause to excuse the procedural default of an ineffective-assistance-of-trial-counsel claim in states where post-conviction proceedings present the defendant's first opportunity to raise such a claim. When state law does not permit a defendant's ineffective-assistance claim to be brought until post-conviction proceedings, the United States

9

Supreme Court reasoned, the post-conviction proceeding is in many ways the equivalent of a prisoner's direct appeal on that claim.

42. Without the Martinez decision's exception, a defendant's claim that he was denied constitutionally adequate assistance at trial could get caught in an eddy at the confluence of federal deference, state procedural law, and inadequate post-conviction counsel, and thereby escape review entirely.

43. In Trevino v. Thaler, 133 S. Ct. 1911, 185 L. Ed. 2d. 1044 (2013), the United States Supreme Court, considering Texas law, held that the same concerns are present, and therefore the Martinez exception applies, when a state's procedural framework makes it highly unlikely that a defendant in a typical case will have a meaningful opportunity to raise ineffective-assistance claims on direct appeal.

44. In Sutton v Carpenter 2014 U.S. App. LEXIS 5101; 2014 FED App. 0050P (6th Cir.), our Sixth circuit Court of appeals specifically applied Martinez, by way of Trevino v. Thaler, 133 S. Ct. 1911, 185 L. Ed. 2D 1044 (2013),, to Tennessee's collateral attack proceedings..

45. Indeed the Court held "..Ineffective assistance of post-conviction counsel can establish cause to excuse a Tennessee defendant's procedural default of a substantial claim of ineffective assistance at trial..."(id.)

46. When a federal habeas corpus petitioner, who has been convicted in a state court

raises a claim of actual innocence of the crime to avoid a procedural bar to the consideration of the merits of the petitioner's federal constitutional claims, then the petitioner must show that a constitutional violation has "probably resulted" in the conviction of one who was actually innocent.

47. because in such circumstances, this standard-rather than the "clear and convincing evidence" standard-is required for purposes of applying the "actual innocence" or "fundamental miscarriage of justice" exception to reach the merits of a challenge to the petitioner's conviction and sentence.

48. This heightened standard in turn, balances the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case, where (1) a claim that a constitutional error has caused the conviction of an innocent person requires a petitioner to support the allegations with new reliable evidence; (2) the quintessential miscarriage of justice is the execution [or incarceration] of a person who is entirely innocent; see Schlup v. Delo 130 L. ed. 2d 808, 513 US 298, 303 (1995)

49. Petitioner Miller avers that for the majority of his substantial U.S. Constitutional claims this Honorable U.S. District Court's analysis is not dependent upon any deference or presumption of correction being given to any state court finding, or the frame work established in **28 U.S.C.§ 2254(d)(1) & (2).**

50. This is because there has been no formal adjudication of dozens of his constitutional claims regarding ineffective assistance of trial counsel.

51. Townsend v. Sain, 372 U.S. 293 (1963), holds that the district court must grant an evidentiary hearing or alternative procedure to resolve controverted factual questions wherever the state court made "no express...finding of facts" and it is not "possible for the District Court to reconstruct the findings of the state trier of fact...because his view of facts is [not plain] from his opinion or [from other written] indicia..."; see also Purkett v. Elem, 514 U.S. 765, 769, (1995). (no due deference due to state court conclusion in that state court failed to make finding on determinative issue.); see also Goodwin v. Johnson 132 F. 3rd 162, 182-184 (Petitioner entitled to evidentiary hearing because 'neither the state district court nor the court of criminal appeals make any [explicit] findings of fact on the issue...[thus]...when the state court did not resolve a fact issue that would entitle the petitioner to relief if resolved in his favor, the petitioner is entitled to an evidentiary hearing on the issue...)

## LIST OF SUPPORTING GROUNDS:

## PROCEDURALLY DEFAULTED 28 U.S.C. § 2254 CLAIMS BROUGHT PURSUANT TO MARTINEZ V. RYAN, 132 S. Ct., 1309 (2012) & SUTTON V CARPENTER 2014 U.S. APP. LEXIS 5101 (6th CIR.)

52.    The following constitutional claims and arguments are broken down into two separate subsections, the first deals with the procedural gateway claims regarding ineffective assistance of post conviction counsel Michael J. Banks, and the second deals with the underlying substantial constitutional claims that entitle Petitioner Miller to relief, due to the ineffectiveness of Trial Counsel Perianne S. Houghton

### *CLAIMS RELATED TO EXCULPATORY ALIBI WITNESSES AND EVIDENCE OF 3RD PARTY GUILT:*

(I.)    **(a)** Petitioner Miller is Actually innocent of the April 20th, 1995 Murder of Mr. Donald Rice

**(I)(b)**    Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena and present the eyewitness testimony of: (i) Mr. George White; and (ii) Jimmy Ballard, in order to: (a) support the theory of 3rd party guilt of Clement Harris, Tracey Taylor and Slouch; and (b) prove Petitioner Miller's actual innocence.

**(I)(c)**    Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel

Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly present the full exculpatory extent of Jesse James Jones' eyewitness testimony in order to: (a) support the theory of 3rd party guilt of Clement Harris, Tracey Taylor and Slouch; and (b) prove Petitioner Miller's actual innocence.

**(I)(d)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena and/or present the eyewitness testimony of: (i) Mrs. Lucille Miller; (ii) Dave C. Williams; (iii) James Priddy; (iv) Mary Loiuse Taylor; (v) Mrs. Sam Ethel Williams; (vi) former Assist .D.A. Ted Neuman; (vii) Clifford A Worden, (viii) Mr. T.T. Boyd; (ix) Marvin Grandberry; (x) Jenifer Praitt; (xi) Mose Comage; (xii) Harold Booker and (xiii) other witnesses with relevant exculpatory testimony, in order to: (a) debunk and impeach the testimony of Clement Harris and support the theory of 3rd party guilt

**(I)(e)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly subpoena and/or present the eyewitness testimony of: i) Mrs. Lucille Miller; (ii) Dave C. Williams; (iii) James Priddy; (iv) Mary Loiuse Taylor; (v) Mrs. Sam Ethel Williams; (vi) former Assist .D.A. Ted Neuman; (vii) Clifford A Worden, (viii) Mr. T.T. Boyd; (ix) Marvin Grandberry; (x) Jenifer Praitt; (xi) Mose Comage; (xii) Harold Booker and (xiii) other witnesses with relevant exculpatory testimony, -at Petitioner Miller's August 19th, 2014 Post conviction evidentiary hearing, pursuant to State v. Black 794 S.W. 752,757 (Tenn. 1990).

**(II.) (a)** Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena and present the eyewitness testimony of (i) George White; and (ii) Jimmy Ballard, in order to: (a) support the theory of 3rd party guilt of Clement Harris, Tracey Taylor and Slouch; and (b) prove Petitioner Miller's actual innocence.

**(II)(b)** Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly present the full exculpatory extent of Jesse James Jones' eyewitness testimony in order to: (a) support the theory of 3rd party guilt of Clement Harris, Tracey Taylor and Slouch; and (b) prove Petitioner Miller's actual innocence.

14

**(II)(c)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly subpoena and/or present the eyewitness testimony of: i) Mrs. Lucille Miller; (ii) Dave C. Williams; (iii) James Priddy; (iv) Mary Loiuse Taylor; (v) Mrs. Sam Ethel Williams; (vi) former Assist .D.A. Ted Neuman; (vii) Clifford A Worden, (viii) Mr. T.T. Boyd; (ix) Marvin Grandberry; (x) Jenifer Praitt; (xi) Mose Comage; (xii) Harold Booker and (xiii) other witnesses with relevant exculpatory testimony, in order to: (a) debunk and impeach the testimony of Clement Harris; and (b) support the theory of 3rd party guilt

**(III.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena, follow up and obtain the evidence of 3rd party guilt, gathered by the Brownsville Police Department and Haywood county district Attorney's office, with respect to the identity of the Caller who was an alleged perpetrator in the crime

**(IV.)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena, follow up and obtain the evidence of 3rd party guilt, gathered by the Brownsville Police Department and Haywood county district Attorney's office, with respect to the identity of the Caller who was an alleged perpetrator in the crime

**(V.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena, follow up and obtain the evidence of 3rd party guilt, gathered by the Brownsville Police Department, Haywood county district Attorney's office, and Private Investigator Clifford A. Worden.

**(VI.)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena, follow up and obtain the evidence of 3rd party guilt, gathered by the Brownsville Police Department, Haywood county district Attorney's office, and Private Investigator Clifford A. Worden.

**(VII.)** Post Conviction Counsel Micheal Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th Amend. U.S. Const. Claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to specifically ask Clement Harris during Cross examination if he killed the victim or had anything to do with the murder of the victim Donald Rice, and then introduce the highly inculpatory of testimony of Nina Champion as both extrinsic impeachment pursuant to Tenn.R.Eivd.Rule 613,and substantive testimony as a declaration against a penal interest pursuant to Tenn.R.Eivd.Rule 803(1)

**(VIII.)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to specifically ask Clement Harris during Cross examination if he killed the victim or had anything to do with the murder of the victim Donald Rice, and then introduce the testimony of Nina Champion as both extrinsic impeachment pursuant to Tenn.R.Eivd.Rule 613,and substantive testimony as a declaration against a penal interest pursuant to Tenn.R.Eivd.Rule 803(1)

## CLAIMS RELATED TO PROSECUTORIAL MISCONDUCT AND BRADY AND GIGLIO VIOLATIONS

**(IX.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena and present the eyewitness testimony of:(i) Barbara Blade; (ii) Jimmy Jones; (iii) Scott Tucker, and (iv) Hollis Hunt in order to prove that there was a non-prosecutorial agreement entered into with state star witnesses clement Harris and Shelia Bernil.

**(X.)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena and present the eyewitness testimony of:(i) Barbara Blade; (ii) Jimmy Jones; (iii) Scott Tucker, and (iv) Hollis Hunt in order to prove that there was a non-prosecutorial agreement entered into with state star witnesses clement Harris and Shelia Bernil.

**(XI.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to

16

Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly to challenge the State's violation of Mooney v Holohan 294 U.S. 103 (1935) and Napue v Illinois, 360 U.S. 264, (1959), when they knowingly suborned perjury and/or presented the false testimony of state star witnesses Clement Harris and Shelia Bernil, with regard to their plea deals and non prosecution agreement with the state D.A. Office.

(XII.) Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly to challenge the State's violation of Mooney v Holohan 294 U.S. 103 (1935) and Napue v Illinois, 360 U.S. 264, (1959), when they knowingly suborned perjury and/or presented the false testimony of state star witnesses Clement Harris and Shelia Bernil, with regard to their plea deals and non prosecution agreement with the state D.A. Office.

(**XIII.**)     Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to diligently investigate, discover and then challenge the State's violations of the requirements of Brady v. Maryland, 373 U.S. 83, (1963) and Giglio v. United States, 405 U.S. 150, 153, 154 (1972). which entailed the D.A.'s office knowingly suppressing and concealing non-prosecution agreements with the state star witnesses Clement Harris and Shelia Bernil.

(**XIV.**)     Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to diligently investigate, discover and then challenge the State's violations of the requirements of Brady v. Maryland, 373 U.S. 83, (1963) and Giglio v. United States, 405 U.S. 150, 153, 154 (1972). which entailed the D.A.'s office knowingly suppressing and concealing non-prosecution agreements with the state star witnesses Clement Harris and Shelia Bernil.

(**XV.**) Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly argue that the Trial Judge Lafferty erred in denying the Motion to

recuse the D.A's office for 28th judicial District due to an inherent conflict of interest.

**(XVI.)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly argue that the Trial Judge Lafferty erred in denying the Motion to recuse the D.A's office for 28th judicial District due to an inherent conflict of interest.

## *DEFICIENT TRIAL PERFORMANCE WITH RESPECT TO JURY INSTRUCTIONS:*

**(XVII.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that trial Counsel Perianne S. Houghton, was ineffective for failing to properly argue that the cancellation rule in the State of Tennessee, foreclosed Judge L. T. Lafferty, from ruling that the evidence didn't support an instruction on facilitation and Criminal Responsibility.

**(XVIII.)** Trial Counsel Perianne S. Houghton, was ineffective for failing to properly argue that the cancellation rule in the State of Tennessee, foreclosed Judge L. T. Lafferty from ruling that the evidence didn't support an instruction on facilitation and Criminal Responsibility.

**(XIX.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that trial Counsel Perianne S. Houghton, was ineffective for failing to properly argue that Judge Lafferty violated Petitioner's right to a Jury Trial, when he failed to instruct the Jurors on the lesser included offense of Criminal Responsibility for Facilitation of conduct of another as required by T.C.A. § 40-10-108 and State v. Lewis, 978 S.W.2d. 558 (Tenn.Crim.App 1995) which was the controlling case at the time of Petitioner's August 2001 trial.

**(XX.)** Trial Counsel Perianne S. Houghton, was ineffective for failing to properly argue that Judge Lafferty violated Petitioner's 6th Amend right to a Jury Trial, when he failed to instruct the Jurors on the lesser included offense of Criminal

Responsibility for Facilitation of conduct of another as required by T.C.A. § 40-10-108 and State v. Lewis, 978 S.W.2d. 558 (Tenn.Crim.App 1995) which was the controlling case at the time of Petitioner's August 2001 trial.

**(XXI.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that trial Counsel Perianne S. Houghton, was ineffective for failing to put on adequate supporting evidence and properly argue that Petitioner was entitled to the Lesser included offense instructions pursuant to State v. Eli, 48 S.W. 3d. 710 (Tenn. 2001) and State v. Burns 6 S.W. 3d. 453. (Tenn. 1999)

(XXII.) Trial Counsel Perianne S. Houghton, was ineffective for failing to put on adequate supporting evidence and properly argue that Petitioner was entitled to the Lesser included offense instructions pursuant to State v. Eli, 48 S.W. 3d. 710 (Tenn. 2001) and State v. Burns 6 S.W. 3d. 453. (Tenn. 1999), which were the controlling cases at the time of Petitioner's August 2001 trial.

**(XXIII.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that trial Counsel Perianne S. Houghton, was ineffective for failing to properly argue that the evidence as a matter of law is legally insufficient to elevate the murder form Second degree to first degree pursuant to State v. Winters 137 S.W. 3d. 641 (Tenn. 2003) and State v. Bordis, 905 S.W.2d. 214 (Tenn.Crim.App. 1995)

(XXIV.) Trial Counsel Perianne S. Houghton, was ineffective for failing to properly argue that the evidence as a matter of law is legally insufficient to elevate the murder form Second degree to first degree pursuant to State v Winters 137 S.W. 3d. 641 (Tenn. 2003) and State v. Bordis, 905 S.W.2d. 214 (Tenn.Crim.App. 1995)

**(XXV.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that trial Counsel Perianne S. Houghton, was ineffective for failing to give fact based and logically consistent closing and opening arguments based on the thirty significant points which thoroughly proved and persuasively supported: (i) Petitioner Miller's

innocence; and (ii) third party guilt which focused on Clement Harris, Tracey Taylor and Slouch.

(XXVI.)    Trial Counsel Perianne S. Houghton, was ineffective for failing to give fact based and logically consistent closing and opening arguments based on the thirty significant points which thoroughly proved and persuasively supported: (i) Petitioner Miller's innocence; and (ii) third party guilt which focused on Clement Harris, Tracey Taylor and Slouch.

## *CLAIMS RELATED TO THE PREJUDICIAL ADMISSION OF PRIOR BAD ACTS*

(XXVII.)    Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue  and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, was ineffective for failing to put on adequate supporting evidence and properly argue that admission of prior bad acts, was done in direct violation of Tenn.R.Evid. Rule 404(b) and therefore violated Petitioner due process rights at the  August 2001 trial.

(XXVIII.)    Trial Counsel Perianne S. Houghton, was ineffective for failing to put on adequate supporting evidence and properly argue that admission of prior bad acts, was done in direct violation of Tenn.R.Evid. Rule 404(b) and therefore violated Petitioner due process rights at the  August 2001 trial.

## *CLAIMS RELATED TO THE FIALURE TO PROPERLY INFORM HIM OF THE TERMS OF A PLEA AGREEMENT*

(XXIX.)    Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue  and preserve the 6th U.S. Const. Amend claim that  Trial Counsel Perianne S. Houghton, was  ineffective for providing erroneous legal advice concerning the plea bargain, that was proffered by the State.

(XXX.)    Trial Counsel Perianne S. Houghton, was  ineffective for failing in her duty to properly communicate the terms and conditions of a formal best *interest plea* offer from the prosecution, that was favorable to Petitioner Miller.

## FAILURE TO PROPERLY REQUEST AND PRESENT EXCULPATORY EXPERT WITNESS TESTIMONY

**(XXXI.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to: (a) *properly request* funding from Judge Lafferty, pursuant to Tenn.S.Ct Rule 13 and State v. Barnett 909 S.W.2d 423 (Tenn. 1995); (b) obtain the funding for a videographer/crime scene reconstructionist in order to prove the physical and scientific impossibility of state Star witness Clement Harris' testimony.

**(XXXII.)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to: (a) *properly request* funding from Judge Lafferty, pursuant to Tenn.S.Ct Rule 13 and State v. Barnett 909 S.W.2d 423 (Tenn. 1995); (b) obtain the funding for a videographer/crime scene reconstructionist in order to prove the physical and scientific impossibility of state Star witness Clement Harris' testimony.

**(XXXIII.)** Post Conviction Counsel Micheal Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th Amend. U.S. Const. Claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to *properly obtain and present exculpatory* expert witness testimony of a qualified videographer/crime scene reconstructionist in order to prove the physical and scientific impossibility of state Star witness Clement Harris' testimony.

**(XXXIV.)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to *properly obtain and present exculpatory* expert witness testimony of a qualified videographer/crime scene reconstructionist in order to prove the physical and scientific impossibility of state Star witness Clement Harris' testimony.

**(XXXV.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel

Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly request, obtain and present *exculpatory* expert witness testimony of a qualified blood spatter expert in order to prove the physical and scientific impossibility of state Star witness Clement Harris' testimony.

**(XXXVI.)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly request, obtain and present *exculpatory* expert witness testimony of a qualified blood spatter expert in order to prove the physical and scientific impossibility of state Star witness Clement Harris' testimony.

**(XXXVII.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly request, obtain and present *exculpatory* expert witness testimony of a pathologist in order to prove the physical and scientific impossibility of state Star witness's Clement Harris' testimony; with regard to the i)Time of Death; (ii), condition of the body, and (iii) range of gun shot wounds

**(XXXVIII.)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly request, obtain and present *exculpatory* expert witness testimony of a pathologist in order to prove the physical and scientific impossibility of state Star witness's Clement Harris' testimony; with regard to the i)Time of Death; (ii), condition of the body, and (iii) range of gun shot wounds

### *CLAIMS RELATED TO THE TESTIMONY OF KATHY BLACKWELL:*

**(XXXIX.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that trial Counsel Perianne S. Houghton, was ineffective for failing to put on adequate supporting evidence and properly argue that during the original August 1996 trial, Judge Jerman, had no lawful authority to conduct an in court examination of Kathy Blackwell, pursuant to Tenn.R.Evid. Rule 614 .

**(XL.)** Trial Counsel Perianne S. Houghton, was ineffective at the August 2001 trial for failing to have stricken any and all portions of Mrs. Blackwell's inculpatory testimony *incident to her in court Judicial examination* from the first

**(XLI.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, was ineffective for failing to have stricken any and all portions of Mrs. Blackwell's inculpatory testimony incident to TBI S.A. Brian Byrd's

**(XLII.)** Trial Counsel Perianne S. Houghton, was ineffective for failing to have stricken any and all portions of Mrs. Blackwell's inculpatory testimony incident to TBI S.A. Brian Byrd's, interview.

## CLAIMS RELATED TO THE TESTIMONY OF NINA CHAMPION :

**(XLIII.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that trial Counsel Perianne S. Houghton, was ineffective for failing to put on adequate supporting evidence and properly argue that during the original August 1996 trial, Judge Jerman, failed to make a lawful finding of unavailability of Nina Champion

**(XLIV.)** Trial Counsel Perianne S. Houghton, was ineffective at the August 2001 trial for failing to put on adequate supporting evidence and properly argue that during the original August 1996 trial, Judge Jerman, failed to make a lawful finding of unavailability of Nina Champion.

## DEFICIENT TRIAL PERFORMANCE WITH RESPECT TO JURY COMPOSITION AND INTEGRITY:

**(XLV.)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, was ineffective for failing to properly argue and demonstrate that an alternate juror who was used to replace Juror Sonya Bell, had

not been present for all of the evidence and testimony.

(XLVI.) Trial Counsel Perianne S. Houghton, was ineffective for failing to properly argue and demonstrate that Petitioner Miller's 6th U.S. Const. Amend right to a jury trial was violated due to the use of an alternate juror who had not been present during all of the trial proceedings wherein evidence and testimony was received into the record.

## CLAIMS BROUGHT PURSUANT TO THE CONTRARY AND UNREASONABLE APPLICATION STANDARD UNDER 28 U.S.C. § 2254(D)(1) & (2):

53. The following constitutional claims and arguments are those that have been previously adjudicated at the state court level.

(XLVII.) The Court of Criminal Appeals Court reached a decision that was both contrary to, and involved an unreasonable application of clearly established Federal law, pursuant to Williams v. Taylor, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2D 389 (2000), when it found that Trial Counsel Perianne S. Houghton was not ineffective for failing to call three defense witnesses; to wit: Mr. Rosa Carney George Liggons, Lucille Miller

(XLVIII.) The Court of Criminal Appeals Court reached a decision that was an unreasonable determination of the facts in light of the evidence presented, when it found that Trial Counsel Perianne S. Houghton was effective despite failing to call three potential witnesses Mr. Rosa Carney George Liggons, Lucille Miller.

(XLIX.) The Court of Criminal Appeals Court reached a decision that was both contrary to, and involved an unreasonable application of clearly established Federal law, as determined by the U.S. Supreme Court when it found that the trial court did not err in refusing to grant a mistrial after a bomb threat;

(L.) The Court of Criminal Appeals Court reached a decision that was an unreasonable determination of the facts in light of the evidence presented, when it found that the trial court did not err in refusing to grant a mistrial after a bomb threat;

(LI.) The Court of Criminal Appeals Court reached a decision that was both

contrary to, and involved an unreasonable application of clearly established Federal law, as determined by the U.S. Supreme Court when it found that the trial court did not err in allowing the prior testimony of an unavailable witness to be read into the record.

(LII.) The Court of Criminal Appeals Court reached a decision constituted an unreasonable determination of the facts in light of the evidence presented, when it found that the trial court did not err in allowing the prior testimony of an unavailable witness to be read into the record.

## **ACTUAL INNOCENCE:**

(LIII.)Petitioner Miller is actually innocent of the offense for which he is currently convicted.

## STATEMENT OF FACTS AND RELEVANT EVIDENCE PRESENTED IN THE STATE COURT PROCEEDINGS,

54. Petitioner avers that the following summation of facts and evidence presented at his August 2001 trial, represents the the strongest legitimate view of the evidence in support of the state's theory, according the to Tennessee Court of Criminal Appeals:

> In the early morning hours of April 20, 1995, the appellant and Donald Rice were sitting in their cars, which were parked driver's window to driver's window, outside a housing project in Brownsville, Tennessee. Both vehicles were burgundy or maroon with four doors. Clement Harris, who was sitting outside the housing project at the time, heard the appellant and Mr. Rice talking. Mr. Harris knew the appellant from school and was able to recognize his voice when he heard him speak with Mr. Rice. After the conversation ended, Mr. Harris saw Mr. Rice begin to back his car away from the area. As Mr. Rice backed up, a gun was fired from the appellant's car, fatally shooting Mr. Rice in the face. After the shooting, the appellant got out of his car, got into Mr. Rice's car, pushed Mr. Rice over, and drove Mr. Rice's car away. A passenger in the appellant's car slid over to the driver's seat and followed the appellant. Mr. Rice's body was subsequently discovered in a ditch, and his abandoned car was later found by the police.
>
> On the day prior to the murder, Nina Champion, 1 an acquaintance of the appellant, saw shotgun shells in the backseat of the appellant's car and a shotgun in the trunk of his car. Officer Johnny Blackburn of the Brownsville Police Department testified that he searched the appellant's bedroom after the murder and found a shotgun that smelled of gunpowder as well as a live, red 12-gauge shotgun shell on a night table, and a spent, red 12-gauge shotgun shell in a shoe under the table. The shells were of the same type and size shot found in the body of Mr. Rice.
>
> The medical examiner testified that Mr. Rice died as a result of a shotgun wound to the head. (see Miller II, 2004 Tenn. Crim. App. LEXIS 3, January 14th, 2001)

55. However, in order to understand the nature and legal basis of Petitioner Miller's ineffective assistance of counsel claims against both Post Conviction Counsel

Banks and trial Counsel Houghton, it is necessary to delve a bit more into the details of the actual evidence that formed the basis of the state's case at his August 2001 criminal trial.

### *Extent of State's inculpatory evidence that was probative of Petitioner Millers Guilt:*

56. Despite the sanitized summary of the Tennessee Court of Criminal Appeals, in the instant case, the State's case consisted of the following, direct and Circumstantial inculpatory testimony:

**DIRECT INCULPATORY EVIDENCE/TESTIMONY:** *Clement Harris*
(He gave live testimony at both the 1996 trial and the 2001 Trial.)

> Clement Harris, who was sitting on a Bucket by himself,(SeeTR-II. pp. 176; L 14) [1] at the two -story apartment complex located on Fairgrounds Street in Brownsville, between Young Street and Jelks Street outside the housing project at the time, heard the appellant and Mr. Rice talking. Mr. Harris knew the appellant from school and was able to recognize his voice when he heard him speak with Mr. Rice.
> According to Mr. Harris After the conversation ended, Mr. Harris saw Mr. Rice begin to back his car away from the area. As Mr. Rice backed up, a gun was fired from the appellant's car, fatally shooting Mr. Rice in the face; and after the shooting, Mr Miller got out of his car, got into Mr. Rice's car, pushed Mr. Rice over, and drove Mr. Rice's car away
> Clement Harris testified that he saw the shot fired from Mr. Miller's automobile at approximately 1:00 am to 2:00 am on the morning of Thursday April 20th, 1995.
> Mr. Harris also testified that he saw Mr. Miller much earlier at Fairgrounds Street, at about 7:00 p.m. on the 19th and ask Mr. Miller for a smoke, and saw Shells on the back seat of Mr. Miller's car seat. (R-II. pp. 206 ; L 9-23)
> Clement Harris said he had seen Curtis Johnson *(Vol 2 of Vol 4) pg 214, Lines 14-15, acknowledges and corroborates Curtis Johnson.*
> Clement Harris testified that a friend named James Priddy took him to the store at 11:30 to 12:00 A.M. , that's how he knew what time the murder occurred. (TR-

---

1 The Original 1996 Trial Record will be referenced as (TR.- I Vol.___ , P__); the second 2001 trial record will be referenced as (TR-II. pp.___; L_____): Petitioner Dwight Miller will be referred to as Petitioner Miller

II. pp. 224; L 1-24)

Clement Harris testified that he discussed the murder with Nina champion, he also testified that he is not friends with Shelia Bernil, but he also discussed the murder with colleges named Mose Comage, Allen Carter, (R-II. pp. 231; L 7-11) and it was Shelia who told him to go to the police, and it was sheila who gave him a ride to the police station hours later, during the early morning hours of Thursday the 20th, 1995.(id)

## INCULPATORY CIRCUMSTANTIAL TESTIMONY/EVIDENCE:
### -*Shelia Bernil*
(She gave live testimony at both the 1996 trial and the 2001 Trial.)

Shelia Bernil testified that Mr. Miller came to her home between 2:00 to 6:00 on the morning of the murders, with another unidentified man, demanding entry into her house. Mr. Bernil stated that she honestly did not remember the time, that Petitioner showed up with another man and wanted to come into her home.

Mrs. Bernil said she went to check with Clement to see if that were true that Mr. Rice was dead.

## INCULPATORY CIRCUMSTANTIAL TESTIMONY/EVIDENCE:
### -*Kathy Blackwell*
(She gave live testimony at the 1996 trial, but not at the 2001 Trial, wherein her statements form the first trial were read to jurors)

Kathy Blackwell testified that she saw Mr. Miller and Mr. Rice together around 1:00 A.M. Mrs. Blackwell said it was her, and Mrs. Bernil together. Mrs. Blackwell said that Mr. Miller came to their home at 2:00, or 2:30 am on Thursday April 20th, 1995. Kathy Blackwell also testified that she went to buy crack,(TR-II. pp. 347; L 20-24) and saw Mr. Miller at 11:00 A.M. On Thursday morning on Elizabeth St. , wherein Petitioner Miller stole $35 dollars form her , while viciously cursing at her, (TR-II. pp. 338; L 18-21) and told her the victim was "dead". (despite the victim not being found by B.P.D. Until 8:30 pm later that day)

## INCULPATORY CIRCUMSTANTIAL TESTIMONY/EVIDENCE:
### -*Nina Champion*
(She did not give live testimony at either the 1996 trial or the 2001 Trial, but her statements to law enforcement and preliminary hearing testimony were read to jurors at both trials.)

Nina Champion testified at the preliminary hearing. Ms. Champion testified that she saw a shotgun in Mr. Miller trunk, and shells in his back seat at noon on Wednesday April 19th, 1995 the day prior to the murder, and approximately 14 hours prior to the alleged time of victims death

## INCULPATORY CIRCUMSTANTIAL TESTIMONY/EVIDENCE:
-Brian Byrd (T.B.I),
(He gave live testimony at both the 1996 trial and the 2001 Trial.)

testified that he took statement from Kathy Blackwell, and that he took the gun, and clothes from Mr. Miller.

## INCULPATORY CIRCUMSTANTIAL TESTIMONY/EVIDENCE:
-*Johnny Blackburn (Brownsville Police Dept.)*
(He gave live testimony at the 1996 trial, and at the 2001 Trial)

testified that he took a shotgun from Mr. Miller's mother's home, and he was the lead Investigator in Mr. Miller's case.

## INCULPATORY CIRCUMSTANTIAL TESTIMONY/EVIDENCE:
-*Dr. O.C. Smith, forensic Pathologist*
(He gave live testimony at both the 1996 trial and the 2001 Trial.)

Dr. O.C. Smith testified that the cause of Mr. Rice's death was a shotgun wound to the head. He also said that there was a 7 ½ shell shot found in Mr. Rice's head and it was similar in size to the shell shot found in Mr. Miller's bedroom.

## LEGAL ARGUMENTS:

57. Petitioner avers that pursuant to **Martinez v. Ryan 132 S.Ct. 1309 (2012)**; his procedurally defaulted Claims of Ineffective assistance of Trial Counsel, are properly before the Court, if: (i) they were not properly presented at Petitioner's first initial collateral attack proceeding;, (ii) due to the ineffectiveness of Post Conviction Counsel; and (iii) they are substantial.

are have "son" Claims are substantial(if they have merit", that is, Petitioner Miller must

establish that his ineffective-assistance of trial counsel claims would have been meritorious. (i.e. but for post conviction counsel's failure to raise the ineffective claim, there is a reasonable probability that the results of the Petitioner's post -conviction proceeding would have been different.) (id)

59. Thus, in making an ineffective-assistance of counsel claim Petitioner Miller must show both that his counsel's performance was deficient and that the deficient performance was prejudicial.

60. This, analysis then requires a sort of inverted order, for Petitioner must show that:

(i) there was a meritorious claim of ineffective assistance of Trial Counsel, regarding Trial Counsel Houghton's performance;

(ii) Post conviction Counsel Bank's failed to properly present and argue this claim at Petitioner's initial collateral attack proceeding; and

(iii), under Tennessee State law, had Post conviction Counsel Banks properly presented this claim, the out come of the post conviction proceedings would have been different, in that Petitioner Miller would have had is conviction overturned and his sentence vacated by the presiding Post Conviction Court Judge J Weber McCraw.

61. Therefore, Petitioner Miller's arguments regarding ineffective assistance of Post Conviction counsel, Micheal J Banks, **_necessarily entails_** an in depth analysis and discussion of controlling Tennessee State Law, that governs the underlying factual basis of his _Ineffective assistance of Trial Counsel claims_, against trial counsel

Houghton

62. The following subsections address the specific facts, evidence, and applicable Tennessee State law that would have required then-presiding post conviction Judge J Weber McCraw to: (i) find that trial counsel Houghton, as a matter of law, rendered ineffective assistance of counsel; and (ii) grant petitioner relief by vacating his conviction and sentence for Premeditated first degree murder.

## I. SPECIFIC CLAIMS (I)-(VIII) THAT JUSTIFY AN EVIDENTIARY HEARING AND EXPANDING THE RECORD: -Failure to properly introduce Exculpatory Witness Testimony

63. The following facts and arguments are being offered in support of the substantial Constitutional Claims, **(II)(a), (II)(b), (II)(c), (IV), (VI)** and **(VIII)**.

**(II)(a)** Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena and present the eyewitness testimony of (i) George White; and (ii) Jimmy Ballard, in order to: (a) support the theory of 3rd party guilt of Clement Harris, Tracey Taylor and Slouch; and (b) prove Petitioner Miller's actual innocence.

**(II)(b)** Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly present the full exculpatory extent of Jesse James Jones' eyewitness testimony in order to: (a) support the theory of 3rd party guilt of Clement Harris, Tracey Taylor and Slouch; and (b) prove Petitioner Miller's actual innocence.

**(II)(c)** Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly subpoena and/or present the eyewitness testimony of: i) Mrs. Lucille Miller; (ii) Dave C. Williams; (iii) James Priddy; (iv) Mary Loiuse Taylor; (v) Mrs. Sam Ethel Williams; (vi) former Assist .D.A. Ted Neuman; (vii) Clifford A Worden, (viii) Mr. T.T. Boyd; (ix) Marvin Grandberry; (x) Jenifer Praitt; (xi) Mose Comage; (xii) Harold Booker and (xiii) other *neighbors.*

witnesses with relevant exculpatory testimony, in order to: (a) debunk and impeach the testimony of Clement Harris; and (b) support the theory of 3rd party guilt

(IV) Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena, follow up and obtain the evidence of 3rd party guilt, gathered by the Brownsville Police Department and Haywood county district Attorney's office, with respect to the identity of the Caller who was an alleged perpetrator in the crime

(VI) Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena, follow up and obtain the evidence of 3rd party guilt, gathered by the Brownsville Police Department, Haywood county district Attorney's office, and Pub. Def, P.I. Clifford A Worden.

(VIII) Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to specifically ask Clement Harris during Cross examination if he killed the victim or had anything to do with the murder of the victim Donald Rice, and then introduce the testimony of Nina Champion as both extrinsic impeachment pursuant to Tenn.R.Eivd.Rule 613, and substantive testimony as a declaration against a penal interest pursuant to Tenn.R.Eivd.Rule 803(1)

64. The following facts and arguments are also being offered in support of the

Procedural gateway Claims, **(I)(a), (I)(b), (I)(c), (I)(d), (I)(e), (III), (V)** and **(VII)**

(I)(a) Petitioner Miller is Actually innocent of the April 20th, 1995 Murder of Mr. Donald Rice

(I)(b)    Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena and present the eyewitness testimony of: (i) Mr. George White; and (ii) Jimmy Ballard, in order to: (a) support the theory of 3rd party guilt of Clement Harris, Tracey Taylor and Slouch; and (b) prove Petitioner Miller's actual innocence.

32

**(I)(c)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly present the full exculpatory extent of Jesse James Jones' eyewitness testimony in order to: (a) support the theory of 3rd party guilt of Clement Harris, Tracey Taylor and Slouch; and (b) prove Petitioner Miller's actual innocence.

**(I)(d)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena and/or present the eyewitness testimony of: (i) Mrs. Lucille Miller; (ii) Dave C. Williams; (iii) James Priddy; (iv) Mary Loiuse Taylor; (v) Mrs. Sam Ethel Williams; (vi) former Assist .D.A. Ted Neuman; (vii) Clifford A Worden, (viii) Mr. T.T. Boyd; (ix) Marvin Grandberry; (x) Jenifer Praitt; (xi) Mose Comage; (xii) Harold Booker and (xiii) other witnesses with relevant exculpatory testimony, in order to: (a) debunk and impeach the testimony of Clement Harris and support the theory of 3rd party guilt

**(I)(e)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly subpoena and/or present the eyewitness testimony of: i) Mrs. Lucille Miller; (ii) Dave C. Williams; (iii) James Priddy; (iv) Mary Loiuse Taylor; (v) Mrs. Sam Ethel Williams; (vi) former Assist .D.A. Ted Neuman; (vii) Clifford A Worden, (viii) Mr. T.T. Boyd; (ix) Marvin Grandberry; (x) Jenifer Praitt; (xi) Mose Comage; (xii) Harold Booker and (xiii) other witnesses with relevant exculpatory testimony, -at Petitioner Miller's August 19th, 2014 Post conviction evidentiary hearing, pursuant to State v. Black 794 S.W. 752,757 (Tenn. 1990).

**(III)** Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue and preserve the 6th U.S. Const. Amend claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to

properly supoena, follow up and obtain the evidence of 3rd party guilt, gathered by the Brownsville Police Department and Haywood county district Attorney's office, with respect to the identity of the Caller who was an alleged perpetrator in the crime

**(V)  Post Conviction Counsel Michael J. Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue  and preserve the 6th U.S. Const. Amend claim that  Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to properly supoena, follow up and obtain the evidence of 3rd party guilt, gathered by the Brownsville Police Department, Haywood county district Attorney's office, and Pub. Def, P.I. Clifford A Worden.**

**(VII) Post Conviction Counsel Micheal Banks was ineffective pursuant to Martinez v. Ryan, 566 U.S. 1, 132 S. Ct., 1309 (2012), when he failed to properly present, argue  and preserve the 6th Amend. U.S. Const. Claim that Trial Counsel Perianne S. Houghton, rendered ineffective assistance of counsel when she failed to specifically ask Clement Harris during Cross examination if he killed the victim or had anything to do with the murder of the victim Donald Rice, and then introduce the highly inculpatory of testimony of Nina Champion      as   both   extrinsic   impeachment   pursuant   to Tenn.R.Eivd.Rule 613,and substantive testimony as a declaration against a penal interest pursuant to Tenn.R.Eivd.Rule 803(1)**

65.  Petitioner avers that there is a plethora of controlling Tennessee State law on the above mentioned claims, that would have required that then-presiding post conviction Judge J. Weber McCraw grant Petitioner Miller relief, had Post Conviction Counsel Bank's properly argued and demonstrated Trial Counsel Houghton's ineffectiveness.

**UNDER THE *JACKSON (infra)*, STANDARD FOR IMPEACHMENT AND THE *TEARS* (infra) STANDARD FOR INEFFECTIVENESS OF COUNSEL, HAD POST CONVICTION COUNSEL PROPERLY ARGUED THAT TRIAL COUNSEL HOUGHTON WAS INEFFECTIVE FOR FAILING TO ADEQUATELY AND PROPERLY PRESENT FAVORABLE**

**AND MATERIAL IMPEACHMENT EVIDENCE THE POST CONVICTION COURT WOULD HAVE RULED THAT COUNSEL HOUGHTON, AS A MATTER OF STATE LAW RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL.**

66. The only evidence at trial, that was dispositive of the question of guilt, was the diametrically different version of events offered through: (a) the exculpatory testimony of Petitioner, which completely denied any involvement in the murders at all (TR-II. pp. 250; L 6-22); and (b) the inculpatory testimony of the four (4) State witnesses: (i) State Star witness Clement Harris; (ii) Nina Champion; (iii) Shelia Bernil; and (iv) Kathrine Blackwell;

67. However, not only was this inculpatory eyewitness testimony extremely weak and contradictory, it would have been totally impeached and proven both forensically and logically inconsistent had Trial Counsel Houghton, diligently pursued a strategy of proving: (i) a theory of 3rd party guilt (i.e. the guilt of Mr. Clement Harris himself, along with his eye-witness-corroborated-accomplices (a) Tracey Taylor and (b) an individual named slouch; and (ii) Petitioner Miller's actual innocence.

68. Indeed, the four above mentioned state witnesses Mr. Clement Harris, Mrs. Shelia Bernil, Mrs. Nina Champion and Mrs. Kathy Blackwell, all gave testimony that was patently false and could have been objectively and thoroughly disproven; and thus the four said state witnesses could have been totally and completely

35

impeached by trial Counsel Houghton, if she had been diligent and thorough in her execution of Petitioner Miller's defensive strategy at his August 2001 trial:

### (i) *strategy of proving Petitioner Miller's actual innocence.*

(a.) First Petitioner Miller had no motive to commit the Murder of Mr. Donald Rice

(b.) Secondly, Petitioner Miller had no opportunity to commit the said murder, because for the entire day of both Wednesday April 19th, and Thursday April 20th, 1995 Petitioner Millers whereabouts could be accounted for , especially during the alleged time of the murders (i.e 1 am – 2 am Thursday morning)

### (ii) *strategy of proving the theory of 3rd Party Guilt*

(a.) Strategy of proving a theory of 3rd Party guilt of Clement Harris, Tracey Taylor, and Slouch.

(b.) How all three of these individuals had both the opportunity to commit such a murder and a motive to do so.

69. In order to have proven and supported these two general strategic objectives , there were plenty of witnesses that Trial Counsel Perianne S. Houghton should have subpoenaed and examined in front of the jurors at Petitioner's 2001 trial.

70. In support of this strategy we have to look at the evidence that would have been probative of Petitioner Miller's innocence; and in doing so we shall begin with a quick citation of the heart of Petitioner's defense, which was his very own statement., denying any involvement in this macabre matter.

71. Indeed Petitioner Millers statement was read to the jury as substantive evidence of his innocence, as follows:

"I Dwight Miller, went to work Wednesday [April 19th, 1995] morning at 6:15 [am]. I work[ed] eight hours. [I] got off from work at 3:30 [pm]. I made it home at 4:05 [pm]. I paint[ed] my mother's den for her. I left home about 7:30 [pm and then] went to the project in Stanton. I ran across some friends. We talked and drank beer. I left the projects a[t] 12:20 [am April 20th, 1995] I went home, got something to eat and went to sleep. Got up at 8[am] Thursday morning. I left the house at 8:45[am]. I went to the project and came to Brownsville and went to the Fairground..." **(TR-II. pp. 253; L 5- 23)**

72.   Following on this train of thought we shall now examine all of the exculpatory witness testimony that could have been subpoenaed and/or presented to the jury at Petitioner Millers August 2001 had trial Counsel Houghton properly prepared and executed a defense.

**THE TESTIMONY OF GEORGE WHITE CREDIBLY ESTABLISHES BOTH MOTIVE AND OPPORTUNITY FOR OTHER NAMED PERPETRATORS TO HAVE COMMITED THE APRIL 20TH, 1995 MURDER OF MR. DONALD RICE**

73.   Petitioner avers that an Interview of Mr. George White, dated June 4th 1997, establishes both motive and opportunity for other named perpetrators in the April 20th, 1995 murder of Mr. Donald Rice.

74.   These named perpetrators would be state star witness Mr. Clement Harris, and his two accomplices, to wit: Tracy Taylor and an individual known by the name of Slouch. See **Attached Exhibit #21 June 4th 1997 Interview with George White, taken by P.I Clifford A Worden, Pub. Defender Office.; pp. 7 line 2-5).**

75.   Pursuant to the Interview with Mr. George White, on June 4th, 1997 Private Investigator Clifford A Worden, of the Brownsville Public Defenders Office, developed and documented that a witness was able to unequivocally and credibly

identify another shooter – by the name of Tracy Taylor, who was a well known associate of an individual known by the nick name, Slouch. See **Attached Exhibit #21; pg 3 line 1-7 pp. 6 Line 11-18,20)**

76. According to Mr. White one day, while at a Barbecue that happened roughly 30 day's after the Murder of Donald Rice, he specifically over heard Slouch tell/accuse Tracy Taylor , saying "Well , you the one that pulled the trigger.." (id. **pg 3 line 1-7** )

77. Both Tracey Taylor and Slouch were confirmed gang members, and drug dealers who among other things, specialized in the distribution of cocaine. (**id. pp. 5 Line 10-16, pp. 13 line 1-20.**)

78. Furthermore, Mr. White's statement clearly establishes that Dono had a large quantity of drugs on his person the night he was killed (**id. pp. 12 Line 19-21, pp. 4 Line 20-21**), along with a large quantity of money, presumably generated from his drug sales. (**id. L. 21**)

79. This witness, Mr. George White, clearly shows that there was motive for Mr. Clement Harris, and his two accomplices, to murder Mr. Donald Rice.

80. In other words, the day Dono[2] was killed, he had got a large quantity of dope

---

2 "Dono" is the nickname for the victim, Mr. Donald Rice. It will be used intermittently throughout the instant Petition, where colloquial quotes and contextual references require such.

[cocaine] from Slouch, (**id. at pp. 4 line 20**) and at the crime scene (i.e. his car where he was shot), there was physical evidence which proves that there was a package present at his side when he was shot, and that this large package created a void in the blood spatter.

81. Chief Johnny Blackburn, testified that immediately after the victim Donald Rice was murdered, the perpetrator or his accomplices took whatever drug related package that was present in Mr. Rice's vehicle, because an examination of the vehicle's blood spatter pattern revealed that there was a void created by the package "...laying beside the driver...between the seat and the door area in that area..." (**Tr. II. pp. 271;L 9-11**)

82. This is probative and indicative of theft of an object from the person and vehicle of Mr. Rice immediately after he was shot in the face.

**State Star Witness Clement Harris' perjury is indicative of his guilt as a co-conspirator/accomplice in the Murder of Mr. Rice:**

83. Furthermore, this Honorable U.S. District Court needs to look at the fact that there were several major points of contradicted/impeached testimony of Mr Harris, that Jurors were exposed to that would have supported the inference of Mr. Clement Harris' guilt, under a theory of 3rd party guilt in light of Mr. George White's statement :

### 1st Blatant impeachment and contradiction probative of Mr. Harris' Guilt as co-conspirator/accomplice in the Murder of Mr. Rice:

Clement Harris' testimony:

> Clement Harris specifically denied on the stand: (i) that he was ever in Mr. Rice's car on the evening of Wednesday April 19th, 1995, or the early morning hours of Thursday April 20th, 1995; and (ii) that he ever bought crack from Mr. Rice that evening.**(Tr. II. Pp 242; L 23)**

84.      However, Chief Johnny Blackburn, specially stated that

> Clement Harris stated that on on the evening of Wednesday April 19th, 1995, and during the early morning hours of Thursday April 20th, 1995 he did in fact : (i) get into and ride around inside of Mr. Rices' car; and (ii) that he purchased a quantity of crack cocaine from Mr. Rice that evening, **(Tr. II. Pp 291;L 10-18)**

### 2nd Blatant impeachment and contradiction probative of Mr. Harris' Guilt as co-conspirator/accomplice in the Murder of Mr. Rice:

Clement Harris' testimony:

> Clement Harris specifically testified that Shelia Bernil gave him a ride to the police station at dawn (i.e "..as soon as day broke".)  on the morning of Thursday April 19th, 1995; a few hours after the alleged murder he witnesses **(Tr. II. Pp 242; L 23)**

85.      However, Chief Johnny Blackburn, specially stated that

> it was not Shelia Bernil who brought Clement Harris to the station around dawn, but that Haywood County Sherrifs Deputy Billy Blackwell who went and picked up Clement Harris and brought him to the Brownsville Police Department, around 4:00 pm in the afternoon shortly before Petitioner Miller himself arrived **(Tr. II. pp. 273;L 5-7)**

86.      In addition to the foregoing, there were several other material facts that were of

particular importance, in terms of supporting the reasonable inference of Clement

Harris' guilt in the murder of Mr. Donald Rice **as co-conspirator/accomplice  in**

the Murder of Mr. Rice, that were never pointed out to the jurors.

> *First Material Fact supporting the reasonable inference of Clement Harris' guilt as co-conspirator/accomplice in the Murder of Mr. Donald Rice.*

87. One such material fact is that Mr. Harris was a known drug addict, offering to give a way cocaine [his preferred drug of choice], and the fact that there was testimony that the victim Mr. Rice, had drugs on him that evening and was looking for the Mr. Clement Harris earlier in the day. (see Curtis Johnson testimony, (id)).

88. Further corroborating this reasonable inference of Clement Harris' guilt as an accomplice and co-conspirator is the fact Mr. Clement Harris, himself, used to Sell Dono's dope and Dono was angry and looking for him the night he was killed **(id. pg 13 Line 7-20)**

89. Further corroboration is provided by the late Mrs. Nina Champion, who puts state witness Clement Harris in Dono's car that evening multiple times. (see **Attached Exhibit #23 Original Statement of Nina Champion; Dated April 21st, 1995.**

90. This establishes a business relationship between state star witness Clement Harris and the victim, Dono, and thus supports the reasonable inference that some degree of foul play had befallen Dono due to his possession of dope and money (i.e. he was murdered and robbed, at the hands of Clement Harris, Tracey Taylor and Slouch.)

91. Indeed, Mr. White basically: (a) presents a confession from the murder's themselves: (b) establishes an irrefutable link between the murderers and their accomplice Mr. Clement Harris.

92. Mr White's statement "......could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." See Kyles, 514 U.S. at 435; see also Johnson, 38 S.W.3d at 58.

93. Therefore, in light of Mr. White's newly discovered statements, there is in fact a reasonable basis to conclude that, in view of the totality of the evidence as a whole, the jury at Petitioner Miller's August 2001 retrial, could have reasonably concluded that Mr. Clement Harris was in fact guilty of the murder himself, or at the very least complicit in the murder and was an accomplice in the murder of Mr. Donald Rice.

**Second Material Fact supporting the reasonable inference of Clement Harris' guilt as co-conspirator/accomplice in the Murder of Mr. Donald Rice.**

94. Another material fact supporting the reasonable inference of Clement Harris' guilt **as co-conspirator/accomplice in the Murder of Mr. Rice**, that was never pointed out to the jurors, is that there was an established pattern of violence exhibited by both Mr. Tracey Taylor and Slouch.

95. Pursuant to Mr. White's statement Mr. Taylor tried to murder a man, at the

Fairground housing projects by literally running the man over with a vehicle that Mr. White had lent to him. (id. **pp. 2 line 11-18**)

96. Based on the Testimony of Mr. White it could have been established in the eyes of the jurors, both direct evidence of guilt and prior bad acts of Mr. Taylor and Slouch, which are probative of intent, motive and absence of mistake in the murders or attempted murders of other people. (**see Tenn.R.Evid 404(b).**

97. In other words, based on the testimony of Mr. White trail counsel Houghton would have been able to put forth <u>substantive evidence of guilt</u>, by way of reasonable inferences based on prior bad acts of Mr. Taylor and Slouch, which were probative of intent, motive, and absence of mistake in the murders or attempted murders of other people. (**see Tenn.R.Evid 404(b).**

98. Mr White's statement "......could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." See Kyles, 514 U.S. at 435; see also Johnson, 38 S.W.3d at 58.

99. Therefore, in light of Mr. White's newly discovered statements, there is in fact a reasonable basis to conclude that, in view of the totality of the evidence as a whole, the jury at Petitioner Miller's August 2001 retrial, could have reasonably concluded that Mr. Clement Harris was in fact guilty of the murder himself, or at the very least complicit in the murder and was an accomplice in the murder of Mr.

Donald Rice.

*Third Material Fact supporting the reasonable inference of Clement Harris' guilt as co-conspirator/accomplice in the Murder of Mr. Donald Rice.*

100. Another material fact supporting the reasonable inference of Clement Harris' guilt **as co-conspirator/accomplice in the Murder of Mr. Rice**, that was never pointed out to the jurors, is that there was an established pattern of a continuing business relationship between (i) State Star Witness Clement Harris; (ii) Mr. Tracey Taylor; (iii) Slouch; and the victim "Dono" Rice

101. In other words, Mr. White's statement clearly establishes a continuing business relationship between Clement Harris, Mr. Taylor, Slouch and Dono, with regard to their illegal drug distribution enterprise and other assorted criminal organizational activities. **(id. pg 5 line 12-22)**

102. Furthermore, Mr. White's statement clearly establishes that Dono had a large quantity of drugs on his person the night he was killed **(id. pp. 12 Line 19-21, pp. 4 Line 20-21)**, along with a large quantity of money, presumably generated from his drug sales. **(id. L. 21)**

103. Furthermore, Mr. White's statement clearly establishes a link both personal and business related, between State Star Clement Harris, Slouch and Tracy Taylor **(id.**

pp. 5 Line 10-16, pp. 13 line 1-20.)

104. Mr. White further ties Mr. Harris directly into dono's drug enterprise when he stated: "...he [Clement Harris] used to hold [cocaine] for ..[Dono in order to].. sell it." and that Mr. Harris would do so by sanding on the corner. (**id. pp. 13L 10-15**)

105. Mr White's statement "......could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." See Kyles, 514 U.S. at 435; see also Johnson, 38 S.W.3d at 58.

106. Therefore, in light of Mr. White's newly discovered statements, there is in fact a reasonable basis to conclude that, in view of the totality of the evidence as a whole, the jury at Petitioner Miller's August 2001 retrial, could have reasonably concluded that Mr. Clement Harris was in fact guilty of the murder himself, or at the very least complicit in the murder and was an accomplice in the murder of Mr. Donald Rice.

> *Forth Material Fact supporting the reasonable inference of Clement Harris' guilt as co-conspirator/accomplice in the Murder of Mr. Donald Rice.*

107. Another material fact supporting the reasonable inference of Clement Harris' guilt **as co-conspirator/accomplice in the Murder of Mr. Rice,** that was never pointed out to the jurors, is that there was objective corroboration of Clement Harris' detailed knowledge of facts that only the actual killers and/or their

accomplices could have known-the location of Dono's body 12-15 hours prior to law enforcement finding it.

108. Mrs. Nina Champion also told Det. Shawn Williams that *she went to see the body during the early morning hours of Thursday April 20th, 1995*-even before Mr. Dono Rice's car was found (at around 3:00 pm on Iola St.) and only Clement Harris, Tracy Taylor, and Slouch knew about the murder. See **Attached Exhibit #22 Supplemental Report of Shawn Williams, Dated July 3rd, 1995; Re-New statement of Nina Champion.**

109. Petitioner avers that, a reasonable juror could have inferred that, this could only have happened if Mrs. Nina Champion *had been told 1st hand by Clement Harris,* ***who in turn, could only have known where the body was dumped, because he along with his co-conspirators Tracy Taylor and Slouch, had put it there.***

110. Nina Champion stated prior to Petitioner Millers 1996 trial that " ....it was told to me by a clement Harris-Clement Harris talked to me before he talked to the Police because me and Clement [Harris] were real close...." **(Tr. I. Vol. I; . 53 L 16-18)**

111. Indeed it's particularly important that one remember that Chief Johnny Blackburn, testified that to his knowledge, the Brownsville Police Department has "....never found anyone that had info about the how that body got there..."**(Tr. I, p. 10); and**

can't find Mr. Rice, ....beyond question that the police can't find Mr. Rice's body until around 3:45 p.m.

the evening of Thursday April 20th, 1995, located in a ditch off of Allen King Rd., (**Tr. II. Vol I; p. 85; L 1**), despite the fact that the call about the body didn't come into 911 dispatch until 5:30 pm, (3 hours earlier).

112. Once again the investigation officially begun at around 3:00 that afternoon, based on the call reporting the abandoned car at Iola St., however Mrs. Champion testifies that she went to see the body even before the police investigation had begun.

113. Indeed Chief Blackburn himself reinforces this conclusion, when he testified that: "..The body was found at 9 pm.....there were no tracks[around the body]......" and that to his knowledge based on the investigation, there was no one that has ever provided any "...information about how the body got there....." (**Tr. I Vol 1, p 10; L 1-3; L 14-16**)

114. One must not forget that Clement Harris himself directly corroborates Nina Champion's statement about going to see the body early on the morning of Thursday April 20th , for he states that he saw and spoke to Nina Champion during the earlier morning hours of Thursday April 20, 1995, (**Tr. II Vol 1, p 238; L 21-23**); which is the very same morning that he conspired with Tracy Taylor and Slouch to murder Dono.

115. Or stated simply, Mrs. Nina Champion had material testimony/evidence with

47

regard to: (i) how she knew where the body was located; and (ii) that this evidence couldn't have come from Petitioner Miller, because she didn't see him until later on that day.

116. Furthermore, Mrs. Nina Champion stated that "Clement Harris was the second man.." in the vehicle that contained the killers who shot Dono Rice. (see **Attached Exhibit #23 Original Statement of Nina Champion; Dated April 21st, 1995.**

117. This line of reasoning is further corroborated by the fact that multiple witnesses put Dono at the Fairground specifically looking for Clement Harris, earlier that evening- See testimony Curtis Johnson **(Tr. II., p 495; L13-29);** see also Chief J. Blackburn's testimony, (Clement Harris got into Dono's vehicle and purchased drugs that evening) (supra); see also Nina Champion. (Clement Harris got into Dono's car multiple times that evening) (supra)

118. In addition to corroborating the testimony of: (i) Nina Champion; (ii) Chief Blackburn, and (iii) Curtis Johnson- Mr White's statement "......could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." See Kyles, 514 U.S. at 435; see also Johnson, 38 S.W.3d at 58.

119. Therefore, in light of Mr. White's newly discovered statements, there is in fact a reasonable basis to conclude that, in view of the totality of the evidence as a

whole, the jury at Petitioner Miller's August 2001 retrial, could have reasonably concluded that Mr. Clement Harris was in fact guilty of the murder himself, or at the very least complicit in the murder and was an accomplice in the murder of Mr. Donald Rice.

> ***Fifth Material Fact supporting the reasonable inference of Clement Harris' guilt as co-conspirator/accomplice in the Murder of Mr. Donald Rice.***

120. Another material fact supporting the reasonable inference of Clement Harris' guilt **as co-conspirator/accomplice in the Murder of Mr. Rice**, that was never pointed out to the jurors, is that there was a .12 gauge shotgun directly connected to the April 20th 1995 murder of "Dono" Rice.

> **THE TESTIMONY OF MR. GEORGE WHITE PROVIDES:**
> **(A) CREDIBLE ALTERNATIVE EXPLANATIONS FOR: (I) WHERE THE MURDER WEAPON CAME FROM; (II) WHO HAD IT; AND (III) WHERE AND HOW IT WAS DISPOSED OF AFTER THE MURDER OF MR. RICE; AND**
> **(B) INDEPENDENT CORROBORATION OF PETITIONER MILLER'S PROOF THAT THE SHOTGUN RECOVERED FROM HIS HOME, WAS NOT THE MURDER WEAPON USED TO KILL MR. DONALD RICE ON THURSDAY APRIL 20th, 1995**

121. George White specifically states that he personally found a 12 gauge roughly 2 months after the BBQ.[see **Attached Exhibit #21 June 4th 1997 Interview with George White, taken by P.I Clifford A Worden, Pub. Defender Office.; pp.**

**16; L 14-15]** (with the BBQ itself having occurred roughly one month after the Murder of Mr. Donald Rice.)

122. Mr. White also specifically and unequivocally stated that Slouch told him that: (a) he [Slouch] hid the gun after the the murder, in some woods off Scott Street, **[pp. 16 line 11-13]**; (b) He wanted it back; and (c) was going to physically assault /attack Mr. White for removing the gun out of it's hiding place, and failing to return it. (.id)

123. Indeed, its important to remember that Dr. O.C. Smith testified that the cause of Mr. Rice's death was a shotgun wound to the head.

124. Dr. Smith, also testified that that there was 7 ½ shell shot found in Mr. Rice's head and it was similar in size to the shell shot found in Mr. Miller's bedroom.

125. Therefore, in the eyes of a rational juror, the shotgun that Mr. White found could have been reasonably been construed as being the murder weapon, *since it was an exact match to the make and model (i.e. 12 gauge shotgun), that Dr. O.C. Smith said was used to murder the victim.*

126. Once again, Mr. George White specifically and unequivocally stated that Slouch told him that he [Slouch] hid a shotgun gun after the the murder in some woods off Scott Street, **[pp. 16 line 11-13]**;

127. Thus, Mr. George White, puts a murder weapon into the hands of Slouch and

Tracy Taylor. (id)

128. For the purposes of admitting their confessions, the statements of both Tracey Taylor and Slouch, would have been admissible, either by calling them as witnesses and specifically asking them, about their statements. (i.e. if they denied making them, they could be impeached pursuant to **Tenn.R.Evd 608,** *Impeachment by proof of character for Truthfulness,* pursuant to **Tenn.R.Evid. 404(a)(3)** which creates an exemption that allows for the use of said evidence of Defendant's character for truthfulness.).

129. In addition to the foregoing, both of their statements/confessions would have been admissible pursuant to **Tenn R.Evid. 803(1.2)(E)** *Admission by a co-conspirator;* as well as their joint collective histories for violence, would have been admissible as substantive evidence of their guilt in the April 20th 1995 murder of "Dono" Rice.

130. Furthermore, Mr. George White, also could have testified to the fact that Mr Tracy Taylor and Slouch, had a documented history of violence. (i.e. Mr. White references an incident in particular wherein Mr. Taylor, violently attacked another man with witness George White's very own car at the fairground projects (**see Attached Exhibit #21, pp. 7 line 4-5).**

131. Such testimony would have been completely admissible under **Tenn R Evid**

**404(b)** to show the intent, knowledge and absence of mistake on the part of the alleged true guilty parties, to wit: Tracey Tarylor, Slouch, and their accomplice, Mr. Clement Harris.

132. Even assuming that Counsel was unable to locate Tracy Taylor, or Slouch she could have laid a foundation by vigorously cross examining Clement Harris about his connection, knowledge and interactions with Mr. Taylor and Slouch.

133. Then during the defense's case and chief, she could have put on the Testimony of Mr. George White and had his testimony entered on the record before the jurors, with an emphasis on the inculpatory hearsay testimony of both Mr. Taylor and Slouch, by: (a) first having them declared unavailable pursuant to **Tenn. R.Evid. 804(b)(3)**; *Declarant Unavailable; Hearsay exceptions, Statement against a Penal interest.*

134. Had, Counsel Houghton introduced the testimony of Mr. George White , it would have completely corroborated the testimony of the witnesses Robert Colmen, **(Tr. II ;.Vol. IV pp. 462-465)**, who told jurors that the shotgun that he found in the Defendant's house, a day or so after the murder: (a) did not smell as if it had been fired recently; and (b) had dust on it and looked as if it hadn't been moved in a while. (id).

135. In addition to corroborating Mr. Colemen's testimony, Mr White's statement

"......could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." See Kyles, 514 U.S. at 435; see also Johnson, 38 S.W.3d at 58.

136. Indeed, Mr. White basically: (a) presents a confession from the murder's themselves: (b) establishes an irrefutable link between the murderers and the exact make and model of the murder weapon, that the murderer's knowledge hiding after the murder.

### THE TESTIMONY OF JESSE JAMES JONES AND HIS ACQUAINTANCE JIMMY BALLARD, PROVIDES CREDIBLE INDEPENDENT CORROBORATION OF MR. GEROGE WHITE'S TESTIMONY WITH RESPECT TO THE VEHICLE USED BY TRACEY TAYLOR AND SLOUCH, AND THEIR ACCOMPLICES TO DISPOSE OF THE VICTIMS CAR AFTER THE MURDER MR. DONALD RICE

137. During Petitioner's second and first trials, Defense witness Mr. James Jesse Jones testified that he saw: (a) a maroon car, later identified as belonging to the deceased Mr. Donald Rice, being dropped off on Iola Street shorty before 6:00 am Thursday morning on April 20th, 1995; and (b) that the driver of the victims car, had a long jerry curl, trench coat, and was light skinned.; (c) the light skinned driver, after parking the car, exited the victims vehicle, in order to get into a smaller vehicle being driven presumably by his accomplice; (d) then was driven away from the Iola street.; and (e) neither of these presumed perpetrators were

Petitioner Miller. (see Tr. II; Vol IV,)

138. While this testimony was of course, material and helped to establish the identity of other perpetrators and participants in this heinous murder, the fact of the matter is that Trial Counsel Houghton, was ineffective for failing to flesh out and complete the contours of the defense theory that should have been offered at Petitioner Miller's August 2001 re-trial.

139. In other words, establishing that there were two individuals who conspired to drop of Mr. Rices' car, **after he was murdered,** and that neither of these two individuals was Petitioner Miller, was of course material and proper, however it was far from sufficient, in terms of demonstrating all that was material and necessary in the context of: (i) proving Mr. Millers actual innocence; and (ii) actually supporting the theory of 3rd party guilt of Clement Harris, Tracey Taylor and Slouch.

140. Quite to the contrary, there were numerous other facts that trial Counsel Houghton, could have and **should have** put before the jurors at Petitioner Miller's August 2001 re-trial, through the testimony of Mr. Jesse Jones, and his associated Mr. Jimmy Ballard.

141. First, Counsel Houghton should have elicited testimony from Mr. Jones, which also showed that he gave a description of a perpetrator who looked liked Clement

Harris or Tracy Taylor dropping of the victims car on Iola St. at 5:45 am, on the morning of the murders. ( see Jesse Jones, TR-II. pp. 498, L 24).

142.  This should have been done by presenting actual photo graphs of both Mr. Taylor, and Slouch and asking if Mr. Jones recognized either of these individuals from that morning on Iola St., when they dropped off the vehicle.

143.  Secondly, Counsel Houghton should have elicited testimony from Mr. Jones, which also showed that these two individuals drove away in a separate car, that was sorta grayish looking or white small compact vehicle.

144.  As this was exactly what he told P.I. Clifford, (i.e. that the car "sorta grayish looking or white [see **Attached Exhibit #28 October 19th, 1995 Interview with Jesse James Jones, taken by P.I Clifford A Worden,  Pub. Defender Office at Fayette County jail Dated 10-19-95;** pg 2 line 2]

145.  Thirdly,  Counsel Houghton should have elicited testimony from Mr. Jones, which also showed that Mr. Jones specifically remembered that the car had some type of writing on the drivers or passenger side door.

146.  Fourth,  Counsel Houghton should have elicited testimony from Mr. Jones, which also showed his friend Mr. Jimmy Ballard, through a chance conversation on day, specifically identified the very same car that Mr. Jones was describing, as belonging to an individual by the name of Tracy Taylor. ( see **Attached Exhibit**

**#28 October 19ᵗʰ, 1995 Interview with Jesse James Jones; p. 4; L 13-20)**

147. Indeed Mr. Jones specifically stated that Mr. Jimmy Ballard and he, were driving one day through the Scott Street area in Brownsville and that by chance Mr. Jones happened to see the same small car that he saw the early morning hours of Thursday April 20ᵗʰ, 1995 on Iola St., that was used to drive away the two individuals who dropped off the victim's car after the murder.

148. During this chance encounter, both Mr. Jones and Mr. Jimmy Ballard could clearly see: (i) that it was a small compact blueish grey or white car,; (ii) that it had distinct writing on the door that was scratched out; and (iii) it had other pertinent characteristics that made this car unique.

149. And upon seeing this car, Mr. Jimmy Ballard, who lived around and was quite familiar with Scott Street, immediately responded that he knew the owner and driver of the car, and that his name of "..Tracy [Taylor].."(**id. See Exhibit #28 p. 4; L. 13-20**) (he was quite familiar with Mr. Tracy Taylor and Slouch who both stayed around there)

150. This is independent corroboration of what Mr. White would have testified to, because in Mr. White's statements he unequivocally declares that "..Tracy Taylor used to drive that car all the time..." (see **Exhibit #21 pg 4 line 14** )

151. Therefore, trial Counsel Houghton should have put on the testimony Mr. George

White and elicited testimony from him, in front of the jurors, regarding the fact

that this was the same exact type of car that was owned by Tracy Taylor and that

he had personally worked on this vehicle for Mr. Taylor.

152. Indeed, Mr. George White stated that Mr. Tarlor's car was "gray or something"

(see **Exhibit #21** pg. 4 L 3 ); and that the car had writing on the side of the door,

as well. (**id. pg. 21-25**)

153. Fifth, Counsel Houghton should have called Mr. Jimmy Ballard to the stand, and

elicited testimony from him, which corroborated both Mr. Jones and Mr. White's

testimony with respect to the vehicle, in question, being owned by Tracey Taylor,

as well.( id. )

154. Thus, three witnesses who have no first hand knowledge of each other, and have

never had a prior encounter, (i.e. Mr. White had never met Mr. Ballard nor Mr.

Jones), were able to independently establish a match of the make and model

description given by Jesse Jones, with regard to the vehicle driven by Tracey

Taylor and Slouch, both on the night of the murder, and a little while after the

murder of Mr. Donald Rice. [**see Attached Exhibit #28 Interview with Jesse**

**James Jones, Fayette County jail 10-19-95 pp. 2l 1-8 ; 13-20**) cross reference

with, (see **Exhibit #21 Interview with George White , Dated June 4th, 1997**)

155. Had Counsel Houghton properly called these witnesses and examined them in

front of the jurors, they would have provided direct evidence of:

    a.) a confession and credible accusation of actual killer. (see **Exhibit# 21, supra, Mr. White's statement)**

    b.) actual murder weapon- to wit 12 gauge shot gun that allege perpetrator acknowledged hiding after the murder, and threatening physical violence to people in order to retrieve it (see **Exhibit# 21, supra, Mr. White's statement)**

    a.) Eye witness testimony that puts alleged murderer Tracey Taylor and slouch in the vicinity of Iola Street dropping off victims car after murder, (see **Exhibit# 28, supra; Mr. Jesse Jones and Jimmy Ballard)**

    b.) Eye witness testimony that puts a car matching alleged make and model owned by Slouch at scene abandoning the victims car. (see **Exhibit# 28, supra; Mr. Jesse Jones and Jimmy Ballard); see also Exhibit# 21, supra, Mr. White's statement)**

    c.) A Drug Currier/seller relationship established between state witness Clement Harris, Tracey Taylor, Slouch and the victim Dono Rice. **(Exhibit# 21, supra)**

    d.) multiple citings of Clement Harris in Dono's car purchasing and selling drugs, (see testimony of Chief J. Blackburn; see also Statement of Nina Champion(supra); and Mr. Curtis Johnson, *infra*

    e.) Clement Harris specifically perjuring himself denying any such drug purchases from Victim Mr. Rice, prior to his murder (id.)

    f.) Information that victim Dono had an altercation argument over drug money with Clement Harris' Associates, Tracey Taylor, and Slouch

    g.) Unidentified finger and palm prints in the vehicle that very likely belonged to Tracey Taylor and and Slouch or Clement Harris (whose fingerprints were never compared to the latent recovered from the vehicle.)

    h.) Statements from Mrs. Nina Champion who was close to both Clement Harris and Mr. Harris' associate Mr. Wright Palmer, went out to see the body in the morning of Thursday April 20th, 1995, after being told it's location by Clement Harris.

156. In further, support of Petitioner Miller's actual innocence trail Counsel Houghton, should have also called the following witnesses to give exculpatory testimony at Petitioner Millers August 2001 retrial.

**(i) Mrs. Lucille Miller;**

for this 15 Rep. der Petition a Miller's 1996 trial his biological mother, Mrs Lucille Miller was in

stated that Miller had painted her den on Wednesday, April 19th. (TE, Vol. 2, p 227) She stated that her son came in that night later that evening, and that it was precisely around the midnight (12 am Thursday morning) time. **(TE, Vol. 2, p 230)**

158. Mrs. Lucille would have testified at both the 2001 trial and at the 2014 post conviction evidentiary hearing that it was specifically before 1:00 when her son got home, (i.e. he was at home specifically during the 1:00 am- 2:00 am time frame) and that she knew that her son was in the room next to hers because she heard him snoring; and that Petitioner Miller spent the rest of the evening in the home with her because she had to wake him up in the morning.

159. Therefore, Petitioner's Mother has expressly provided an alibi for the exact time that Petitioner was alleged, by Clement Harris to, have been at the Fairgrounds projects shooting Mr. Donald Rice.

160. Thus, when Trial Counsel Houghton testified at that August 19th, 2014 Post Conviction evidentiary hearing that she "...just never could pin down anyone who could say that they saw [Petitioner Miller] at the time that this shooting occurred...' this was just plain absurd and factually in accurate.

161. Firstly, pursuant to the testimony of Curtis Johnson , who was with Clement Harris from roughly 8:00 pm Wednesday evening on April 19th, 1995. until 3:30

am early Thursday morning April 20th, 1995, no murder or gun shot's occurred either at Young Street, Jelks street or Fairgrounds, at the projects in Brownsville Tennessee. **(TR-II. pp. 510; L 16-19)**

162. Secondly, there was no independent forensic evidence introduced at trial that proved that the murder even happened between 1-2am on the morning of Thursday April 20th, 1995.

163. In other words pursuant to the testimony of Dr. O.C. Smith, there was absolutely no forensically credible evidence that proved or even supported the suggestion that a murder even occurred before 3 am to 5:30 am of that morning. **(TR-II. pp. 360-362 )**

164. Thirdly, there was no independent forensic evidence, that in any way corroborated or supported the testimony that a crime/murder was even committed at the small parking lot off Jelks street, on the morning of Thursday April 20th, 1995. (see testimony of Johnny Blackburn, **(TR-II. pp. 274; L 9-12)**

165. Therefore, Counsel Houghtons' assertions are made that much more factually baseless and tactically senseless, when she says that she could find no alibi for Petitioner Miller.

**(ii) Dave C. Williams;**

166. Mr. Dave C. Williams, was Petitioner Miller's employer, and he, consistent with

his testimony at the first trial, would have testified that Miller had worked all day on that Wednesday (19th). (TE, Vol. 2, p213) He remembered being asked about this shortly after the Rice murder. (TE, Vol. 2, p 222)

167. This in turn would have directly refuted the testimony of Nina Champion who testified that she saw a shotgun and shells in Petitioner's car, around noon on the afternoon of Wednesday (19th) 1995, 14 hours' prior to the murder of Mr. Donald Rice.

**(iii) James Priddy;**

168. James Priddy was a witness who was quite familiar with the events that occurred at the Fairgrounds housing projects and he, consistent with his testimony at the first trial, would have testified that he is absolutely positive that he never saw State star witness Clement Harris during the early morning hours of Thursday, April 20th, 1995 and he also would have testified that in no way shape or form did he take Mr. Harris to get any chicken, cigarettes or anything else that evening or early morning. **(TE, Vol. 2, p. 252)**

169. Furthermore, and most important, he would have testified that he certainly did not ever tell Mr. Harris what time it was at any time during the late evening hours of April 19th or early morning of April 20th.(id.)

170. This is truly significant in that the very basis of Mr. Harris' testimony concerning

his detailed and precise reason for calculating the time of Mr. Rice's murder, was

exclusively due to Mr. James Priddy telling him the time, while Mr. Priddy was

giving him a ride to the store. **(TR-II. pp. 224; L 1-24)**

### (iv) Mary Loiuse Taylor;

171.    Mary Loiuse Taylor, was witness who was not only quite familiar with the events

that occurred at the Fairgrounds housing projects but that also was a resident who

lived at the Fairgrounds housing project and was physically inside her apartment,

which was one of the closest to the Jelks street parking lot, at the time of the

alleged shooting of Mr. Rice. **(TE, Vol. 2, p. 256).**

172.    Furthermore, Mrs. Taylor, consistent with her testimony at the first trial, would

have testified that she is absolutely positive that he never saw State star witness

Clement Harris during the early morning hours of Thursday April 20th, 1995 as

Mr. Harris alleged, and that in no way shape or form did she ever stick her head

out of her door at any time during those early morning hours, as alleged by Mr.

Harris. **(TE, Vol. 2, p. 256-257)**

### (v) Mrs. Sam Ethel Williams;

173.    Mrs. Williams, the biological Mother of state witness Nina Champion had

material and admissible testimony which touched on a specifically critical point:

(i) Nina champion gave inculpatory hearsay statements regarding admissions by or

related to Mr. Clement Harris guilt as an accomplice/co-conspirator in the perpetrator of the murder of Mr. Donald Rice.

174. Mrs. Williams testified that her daughter Mrs. Nina Champion stated that Mr. Harris was the confessed to being involved in the murderer of the victim, Mr. Rice, whom Petitioner Miller was convicted of murdering. (**TE, Vol. 2, p. 298-300**)

175. Mrs. Champion made these statements to her biological mother out of court.

176. Thus, witness Clement Harris testimony could have been impeached pursuant to Rule 613 with the extrinsic evidence of the biological Mother's testimony, as it went to Mr. Harris' character for truthfulness, which in turn contradicted and impeached what Mr. Harris is alleged to have heard and seen. (i.e. that Petitioner Miller was at the fair grounds talking to Mr. Rice, and then called him back to shoot him.)

177. Furthermore, Mrs. Sam Ethel Williams testimony should have been allowed as direct substantive evidence of guilt of Mr. Clement Harris, because it was credible and trustworthy. (ie if Nina Champion's hearsay statements were sufficiently trustworthy for the purposes of supporting Petitioner Miller's guilt, then they should have been equally trustworthy for showing his innocence.)

178. Indeed the U.S. Supreme Court stated ".. and while the hearsay rule may not be

applied mechanistically to defeat the ends of justice.." it also may not be given short shrift. Rather, any other wise inadmissible hearsay evidence sought to be admitted on due process grounds must, among other things, bear 'sufficient indicia of reliability." Brown, 29 S.W. 3d. 433-34

179. In sum, the case sub judice, is just like State v. Brown, 29 S.W. 3d. 433-34 wherein the Tennessee Supreme Court, held that where a criminal defendant is attempting to present relevant and reliable hearsay that is critical to the defense, the rule against hearsay must yield. (id.) at 436.

180. The trustworthiness of Nina Champion's hearsay testimony was already established by virtue of the court allowing the state to introduce it's inculpatory portions against Petitioner Miller whereas it's exculpatory portions, where specifically and intentionally excluded, disallowed and prohibited.

181. In Brown (supra), the court stated:

"..when the prosecution relies upon evidence of a complainants' physical condition in a sexual abuse case involving an underage rape complainant, defense evidence that provides an alternative explanation for the condition is particularly critical. Indeed, the only evidence which made this case more than a pure credibility context was the state's expert proof of psychical injury to the complainant. Significantly, the State's own medical expert conceded on cross-examination that the physical injury he observed was consistent with the complainant engaging in a consensual sexual encounter with an adolescent male. Under such circumstances depriving the defendant of the right ot present critical , reliable hear say evidence of an alternative explanation for the injury is constitutional error. We are unable to conclude that error was harmless beyond a reasonable doubt in this case. Chapman v California, 386 U.S. 18, 705 (1967) State v. Howell 868 S. W. 2d 238 (Tenn. 1993).."

182. Therefore, trial Counsel Houghton was ineffective for failing to call Mrs. Williams. (or attempt to have her testimony read to the jurors) and then if this was denied by trial Judge Lafferty, Counsel should have went on to explain that it was particularly egregious for the trial Court to allow Nina Champion's hearsay statements to be let in: (i) when by the State's own admissions they failed to diligently attempt to obtain her presence at trial; and (ii) the court disallowed Petitioner Miller the opportunity to impeach Mr. Harris' testimony, by having Mrs. Champions impeaching/contradictory statements read/introduced to the jury.

183. Whereas, had Petitioner Miller been able to offer such testimony, this in turn would have directly refuted/impeached the state's theory, that Clement Harris was merely an innocence bystander who happened to witness the murder, and supported the argument for the defensive theory that Clement Harris was directly responsible, as a co-conspirator in the murder of Mr. Rice. (**TR-II. pp. 206; L 9-23**)

184. This, in turn would have bolstered Petitioner Miller's testimony/statement that he was never even in Brownsville Fairgrounds projects on the Wednesday April the 19th at any time. (**TR-II. pp. 253; L 5-23**); and that he certainly never murdered the victim.

**(vi) former Assist .D.A. Ted Neuman; and (vii) Clifford A Worden,**

65

185. Assist. Dist.Atty Ted Nueman and the Brownsville Police Department had information (i.e. an internal D.A. Memo and field notes) regarding men from Memphis-who were known associates of Mr. Clement Harris-and the victim were arguing that evening over money and drugs. (see Attached Exhibit #1 Motion for Exculpatory Evidence -Dated 1999____)

186. This information was critical and would have helped to shed light on how the Brownsville Police Department had credible and admissible evidence regarding 3rd party guilt, for the murder of Mr. Donald Rice.

187. The Petitioner specifically wanted the Records of the Brownsville police Department which irrefutably supported the guilt of a 3rd party; to wit: Mr. Clement Harris himself, and his associates.

188. Mr. Worden, could have also testified that the caller who made the initial call to the Brownsville Police Department, for the body, was a caller with intimate knowledge of the location who called while Petitioner Miller was in custody[3].

---

3    The victims, body was discovered wearing white slacks, that were completely dry, despite the fact that the grass, brush and immediate surrounding area was soaking wet due to heavy rain storm down pours, that occurred for almost several hours during the morning and afternoon of Thursday April 20th, 1995, that stopped only roughly 20 to 30 minutes before the victims body was located. Therefore, the victim's body was placed in the location where it was found, no more than a 30 minutes prior to being found by local law enforcement agents. Counsel should have homed in on this critical point that the body was moved while Petitioner was in custody of police. Petitioner Miller got the Brownsville Police Dept around 3:50 pm Thursday April 20th, 1995 (see Johnny Blackburn, (TR-II. pp. 247; L 19). Whereas the call indicating the location of the body didn't come in until around 8:30 that evening. See J. Blackbrun, p( 269, L 24) (TR-II. pp. 85; L 1)

189. This in turn would have directly refuted/impeached the state's theory, that Clement Harris was merely an innocence bystander who happened to witness the murder, and supported the argument for the defensive theory that Clement Harris was directly responsible for the murder of Mr. Rice. (**TR-II. pp. 206; L 9-23**)

190. This is why original trial counsel of record Mr. Tom Crider[4], filed a motion specifically requesting this exculpatory information. (see **Attached Exhibit #2 Motion for disclosure of Exculpatory Evidence-Phone Caller Identity -Dated June 6th, 1997**)

191. This critical exculpatory information, in turn would have bolstered Petitioner Millers testimony/statement that he was never even in Brownsville Fairgrounds projects on the Wednesday April the 19th at any time. (**TR-II. pp. 253; L 5-23**); and that he certainly never murdered the victim.

192. In fact, to highlight and emphasize the rank incompetence and lack of adequate preparation on the part of trial Counsel Houghton, we can look to the fact that when trial Counsel Houghton was specially asked, during the August 2014 evidentiary hearing, whether she even knew about Ted Nueman and his exculpatory memo, she responded "no". (See **P.C. Evidentiary hearing transcript, pp. 37 L 19-22**)

_____

best attorney, ... Mr. Crider, recused himself shortly after Petitioner Miller was released on bond in 1998, subsequent to the reversal of his conviction.

193. Furthermore, when asked about the discovery of 3rd party guilt contained in the files of former investigator Clifford Worden, Trial Counsel Houghton responded that she had no knowledge of his case file work or findings of 3rd party's guilt. (id. Pp 41-44)

194. Thus, showing a complete and utter lack of preparation and tactical coherence on the part of trial Counsel Houghton. (Attorney's strategic and tactical choices are entitled to deference, if and only "if the choices are informed...based upon adequate preparation...." Cooper v. State, 847 S.W. 2d. 854, 874 (Tenn. Crim.App. 1992)); see also (".. To establish the prejudice prong, a petitioner, must show that 'there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different...'; Strickland (at 694)); see also Austin v. Bell, 126 F.3d 843, 848 (6th Cir. 1997) (Failure to conduct a reasonable investigation constitutes deficient performance.)

195. Although a defendant cannot establish ineffective assistance based upon a failed strategy or an unsuccessful trial tactic, strategy and tactical choices are given deference only when counsel _has conducted a reasonably adequate investigation prior to making such decision_." Goad v State 938 S.W. 2d. 363, 369 (Tenn 1996) citing Hellard v State, 629 S.W. 2d. 4, 9 (Tenn. 1982), see also Cooper v. State, 847 S.W. 2d. 521, 528. (Tenn.Crim.App. 1992) ("[D]eference to tactical choices

only applies if the choices are informed ones based upon adequate preparation.'., Here the trial attorneys, as the majority properly concludes, fell short in the exercise of their responsibilities.."

**(viii) Mr. T.T. Boyd; & (ix) Marvin Grandberry;**

196. Both of these witnesses could have buttressed Petitioner Miller's statements that he was in Stanton projects from shortly after he left his mothers house, after painting her den, until around 12: am when he left and went home. (see **Attached Exhibit #24 June 11th 1997 Interview with T.T.Boyd; p. 1; L 11-13; p.2: L 10-20; p. 4, L 7,8.**) as this corroborates Petitioner Miller's alibi as explained by Chief J. Blackburn, (see **Tr. I. Vol I, p. 6, L-12-15**)

197. This in turn would have directly refuted/impeached the testimony of Clement Harris who testified that he saw Petitioner Miller, at the Brownsville Fairgrounds projects, earlier in the day on Wednesday (19th) 1995, about 8 hours' prior to the murder of Mr. Donald Rice, and received a cigarette from Petitioner. (**TR-II. pp. 206; L 9-23**)

198. Which in turn would have bolstered Petitioner Miller's testimony/statement that he was never even in Brownsville Fairgrounds projects on that Wednesday April the 19th at any time. (**TR-II. pp. 253; L 5-23**)

(x) Jennifer Pruitt;

199. Mrs. Praitt, could have buttressed Petitioner Miller's other witnesses such as Mrs. Rosa Carney who would have testified that Petitioner Miller was in Stanton projects specifically around 12: am time period when he left and went home.

200. This in turn would have directly supported, the Testimony of Mr. Boyd, Mr. Granberry, Mrs. Carney, who all testified, that due to Petitioner's location at Stanton Projects, he couldn't possibly have been in Brownsville at the Fairgrounds, giving cigarettes' to state star witness Clement Harris.

201. This in turn would have directly refuted/impeached the testimony of Clement Harris who testified that he saw Petitioner Miller, at the Brownsville Fairgrounds projects, earlier in the day on Wednesday (19th) 1995, about 8 hours' prior to the murder of Mr. Donald Rice, and received a cigarette from Petitioner. **(TR-II. pp. 206; L 9-23)**

202. Which in turn would have bolstered Petitioner Millers testimony/statement that he was never even in Brownsville Fairgrounds projects on the Wednesday April the 19th at any time. **(TR-II. pp. 253; L 5-23)**

**(xi) Mose Comage;**

203. During his highly perjurious and self contradictory testimony state star witness Clement Harris testified that he had received a ride form an unknown person and arrived at the Fairgrounds area at roughly 8:30 pm. **(TR-II. pp. 178; L 11-16)**

204. At which time he went to visit his friend named Mose Comage, who lived directly across the street from the Fairgrounds. (id.)

205. However, Investigator Worden, had testimony and evidence, that not only did Mose Comage not stay where Mr. Clement Harris testified he lived, but that Mr. Comage would have testified that Mr. Harris never visited him that evening, and would not have been welcomed to do so, had he tried. (See Curtis Johnson testimony.-**TR-II. pp. 508, L 19-24; pp. 509; L 1-8**)

206. This in turn would have directly refuted/impeached the testimony of Clement Harris and completely undercut the credibility of the factual basis of his entire testimony regarding the events of the murders as they allegedly happened. (**TR-II. pp. 219; L 9-23**)

207. Which in turn would have bolstered the Defense's theory that: (i) state witness Clement Harris' testimony was utterly devoid of any truth; and (ii) Petitioner Miller was never even in Brownsville Fairgrounds projects on the Wednesday April the 19th at any time. (**TR-II. pp. 253; L 5-23**); and (iii) Petitioner Miller certainly didn't murder the victim Mr. Rice.

**(xii) Harold Booker & (xiii) other witness with exculpatory evidence.**

208. Harold Booker and several other witnesses, that trial Counsel Houghton failed to call, could have testified to exculpatory facts regarding statements that he had

71

taken and facts that he observed which completely and totally impeached the testimony of state star witness Clement Harris[5].

### *Post Conviction Counsel Bank's failure to comply with State v. Black, 794 S.W. 752 ,757 (Tenn. 1990)*

209. Pursuant to State v. Black 794 S.W. 752 ,757 (Tenn. 1990). Post Conviction Counsel Banks, was supposed to have subpoenaed and/or presented the the testimony of: (i) Mr George White; and (ii) Jimmy Ballard.-at Petitioner Miller's August 19th, 2014, Post conviction evidentiary hearing, so that their testimony could have been admitted into the record and considered by presiding Judge J Weber McCraw.

210. In addition to the foregoing, Post Conviction Counsel Banks, was also supposed to have subpoenaed and/or presented the testimony of: (i) Mrs. Lucille Miller; (ii) Dave C. Williams; (iii) James Priddy; (iv) Mary Loiuse Taylor; (v) Mrs. Sam Ethel Williams; (vi) former Assist .D.A. Ted Neuman; (vii) Clifford A Worden, (viii) Mr. T.T. Boyd; (ix) Marvin Grandberry; (x) Jennifer Praitt; (xi) Mose Comage; (xii) Harold Booker and (xiii) other witnesses with relevant exculpatory testimony, such as Jesse James Jones.

211. Once again, the purpose of calling these witnesses to the evidentiary hearing,

---

5        Petitioner avers that these statements and exculpatory evidence are contained in the Haywood county D.A's case file, and were never turned over to the Defense.

pursuant to State v. Black 794 S.W. 752,757 (Tenn. 1990), was to allow their testimony to have been admitted into the record and considered by presiding Judge J Weber McCraw.

212. At which time then Presiding Judge McCraw, was supposed to determine three critical factors: (1) whether the testimony would have been *admissible at trial and* (2) whether the testimony would have been *material to the defense;* and (3) whether the *witnesses* testimony *was credible.* See McAlpin 2005 Tenn.Crim.app. Lexis 1081, 2005 WL 2453983 at *8 (Oct 5 2005). (When a petitioner presents at the post conviction hearing a witness he claims should have been called at trial, the post-conviction could must determine whether the testimony would have been *(1) admissible at trial and (2) material to the defense.*); see also State v. Young 196 S.W. 3Rd 85, 107 (Tenn. 2006) (Finally when the post conviction court has determined that the proffered testimony is both admissible and material, *the court then must asses whether the witness was credible.*)

213. However, Post Conviction Counsel Banks, failed to investigate let alone call witness such as Mr. George White or Jimmy Ballard.

214. Indeed, because Post Conviction Counsel Banks was ineffective, his failure to present the testimony of (i) Mrs. Lucille Miller; (ii) Dave C. Williams; (iii) James Priddy; (iv) Mary Loiuse Taylor; (v) Mrs. Sam Ethel Williams; (vi) former

Assist .D.A. Ted Neuman; (vii) Clifford A Worden, (viii) Mr. T.T. Boyd; (ix) Marvin Grandberry; (x) Jennifer Praitt; (xi) Mose Comage; (xii) Harold Booker and (xiii) other witnesses -at Petitioner Miller's August 19th, 2014 evidentiary hearing pursuant to *Black* (surpa), prevented Judge McCraw from performing his proper function as the trier of fact, in assessing the merits of Petitioner Miller's ineffective assistance of counsel claims against Trial Counsel Houghton.

215. Post Conviction Counsel Banks would have been on firm legal ground however, to present all of the testimony of the aforementioned witnesses, especially that of Mr. George White and Mr. Jimmy Ballard pursuant to Plyant v State, 263 S.W. 3d. 854, (June 5, 2008)

216. *Plyant*, (id) is a case which has facts very similar to the facts of case *sub judicie*, wherein a Post Conviction Court had overruled Defendants motion to introduce inculpatory hearsay statements offered against a 3rd party, to show that they were guilty of the victim's murder.

217. However, the Court of Criminal Appeals held that the Post Conviction court had erred, in denying the Petitioner Plyant's attempts to *offer the hearsay testimony*, because Defendant Plyant wasn't offering the hearsay testimony, for the truth of the matter asserted by rather to demonstrate that trial counsel was deficient in not calling these witnesses at Trial.