IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| DWIGHT MILLER, | ) |
| Petitioner, | ) |
| v. | ) Case No. 1:15-cv-01281-STA-jay |
| TENNESSEE ATTORNEY GENERAL HERBERT H. SLATERY, III, | ) |
| Respondent. | ) |

ORDER DENYING MOTION FOR UNCONDITIONAL WRIT OF HABEAS CORPUS

On October 18, 2021, Petitioner Dwight Miller filed a document styled "Motion for an Unconditional Writ of Habeas Corpus, the Expung[e]ment of Petitioner's Conviction, and Barring the Reprosecution of Petitioner by the State of Tennessee" (the "motion for unconditional writ"). (ECF No. 70.) For the following reasons, the motion is **DENIED**.[1]

BACKGROUND

In 2015, Petitioner filed a *pro se* habeas corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. In an order dated September 26, 2019, the Court denied the Petition's fifty-three claims, but granted a limited certificate of appealability on Miller's claim that the trial court abrogated his Sixth Amendment right to confront witness Kathy Blackwell. On April 19, 2021, the United States Court of Appeals for the Sixth Circuit reversed the denial of the confrontation-

---

[1] Petitioner has been released from custody. The Clerk is therefore **DIRECTED** to modify the docket to reflect Tennessee Attorney General Herbert H. Slatery, III, as Respondent. *See* Fed. R. Civ. P. 25(d).

clause claim. The Sixth Circuit held that "[t]he Tennessee Court of Criminal Appeals' application of the Confrontation Clause's protections to" the trial court's admission of the redacted transcript of witness Kathy Blackwell "was objectively unreasonable." (ECF No. 58 at 16.) The court therefore remanded the case with instructions for this Court "to grant Miller a conditional writ of habeas corpus." (*Id.*)

On May 13, 2021, the Court granted Miller "a conditional writ of habeas corpus that will result in his release unless Respondent notifies the Court within thirty days of entry of this order that the State of Tennessee intends to retry Miller based on evidence other than that contained in Kathy Blackwell's redacted transcript *and* actually commences Miller's retrial within 120 days of entry of this order." (ECF No. 64 at 2 (emphasis in original).) Respondent filed a notice of intent on June 11, 2021, which was within the 30-day window set forth in the conditional writ. (ECF No. 65.)

On September 7, 2021, Petitioner filed an emergency motion for an unconditional writ of habeas corpus. (ECF No. 66.) He alleged that at the time it filed its notice of intent, the State did not intend to commence a retrial by the 120th day, which was September 10, 2021. He requested an unconditional writ with prejudice to re-prosecution. The Court denied the motion without prejudice on the ground that the time for commencing a retrial had not expired. (ECF No. 67.) Miller filed a second emergency motion on the morning of September 10, 2021, seeking the same relief on the same grounds asserted in his first emergency motion. (ECF No. 68.) The Court denied the motion as premature. (ECF No. 68). The State released Petitioner from custody later the same day. Since Miller's release, the State has not rearrested him or otherwise detained him. (ECF No. 75-1 at 3.)

Five weeks after his release, Petitioner filed his now-pending motion for an unconditional writ.[2] Miller acknowledges that the State released him from custody before the expiration of the 120-day period. He nevertheless argues that the State did not comply with the writ because it, allegedly, filed its notice of intent without actually intending to begin a retrial by September 10, 2021. He alleges that the State "fail[ed] to take any steps to actually retry" him in order to "keep [him] incarcerated as long as possible--with no basis for the incarceration and no chance for him to seek bond." (ECF No. 70 at 7.) He insists that, "since the State filed its 'Notice of Retrial' on June 11, 2021, . . . it has failed to take *any* affirmative steps required to retry" him. (*Id.* at 3 (emphasis in original).) More specifically, he alleges that, up through the time he filed his motion on October 18, 2021, the State had not (1) "open[ed] a case or provide[ed] [him] with a docket number, meaning that he was unable to request bond as is required by the constitution of the State of Tennessee"; (2) take[n] any steps to appoint a Special Judge, which was required because the only sitting Judge in Haywood County was the prosecutor in [his] trial"; (3) appoint[ed] . . . counsel [for him] as is required by the Sixth Amendment"; (4) "ma[de] any *Brady* disclosures"; (5) identif[ied] any of its fact or expert witnesses"; (6) provide[d] discovery of any kind"; (7) provide[d] [him] with funds to retain his own expert witness"; (8) "schedule[d] a trial . . . or start[ed] a trial as ordered by this Court"; (9) provide[d] [him] with an explanation of how it would proceed without relying on Kathy Blackwell's testimony"; (10) buil[t] in any time for motions *in limine*"; or (11) relocate[d] [him] out of the State penitentiary [before] mid-

---

[2] After Petitioner filed his motion, "Senior Judge William Acree was appointed to" preside over the state court case. (ECF No. 75-1 at 2.) A review of the state court docket shows that Judge Acree held a hearing and entered a scheduling order in October 2021. (*See State v. Miller*, Case No. 1995-CR-116, Order 10/28/21 (Cir. Ct of Haywood Cty.)). In that order, he appointed attorney Michael Working to represent Petitioner in the state court case. The judge also set a conditional deadline for motions and briefs and indicated that he would set a trial date after disposition of Petitioner's motion in the present matter.

3

day on September 10, 2021." (*Id.* at 3-4.) Miller posits that he was therefore unnecessarily incarcerated the entire 120 days--or at least "an additional 90 days"--as a result of Respondent's "gamesmanship" and "callous indifference to [his] unconstitutional incarceration." (*Id.* at 4, 7, 8.) He maintains that the Court should look behind the State's notice of intent to determine if the prosecutors had taken enough steps toward retrial to demonstrate that they intended to commence a retrial by the 120-day deadline.

In support of his argument, Miller submitted the affidavit of his attorney in the present matter, Michael R. Working. (ECF No. 70-1.) Counsel avers that, after the State filed its notice of intent, he took steps of his own "to place Mr. Miller's case back on the [state court] docket and proceed to trial," but his efforts "were thwarted by the inaction of the State of Tennessee." (*Id.* at 3.) Specifically, he avers that, a few days after the State filed its notice of intent, he spoke with the judge who had been "the elected district attorney at the time of Mr. Miller's original indictment and trial." (*Id.* at 2.) The judge advised counsel "that the process for a replacement judge could begin when the State decided to place Mr. Miller's case back on the docket." (*Id.*) Counsel then "called the current district attorney general Frederick Agee, but Mr. Agee did not answer." (*Id.*) Counsel also sought "a special judge through the Haywood County clerk," but was informed by "the Clerk . . . that when the case was placed on the docket by the State of Tennessee, a special judge could be requested." (*Id.*) Counsel thereafter "wrote to the Chief Justice of the Tennessee Supreme Court [about] the process of appointing a special judge." (*Id.*) Attorney Working texted District Attorney General Agee on June 25, 2021, asking Agee to call him. Agee returned the call two days later. Working "spoke with Mr. Agree about the process of setting Mr. Miller on the docket to begin the steps necessary to ensure that he received his trial within 120 days." (*Id.* at 3.) "Mr. Agee indicated that the matter was not a high priority," and

4

that "he would keep Mr. Miller 'in jail as long as possible, then nolle prose the case and reindict it since there's no statute of limitations on murder.'" (*Id.*)  A day after counsel filed his first emergency motion for an unconditional writ on September 7, 2021, Agee called Working to discuss the case.  That was "the first time [Agee called counsel] regarding the case since June 27, 2021." (*Id.*)  Although counsel "was unable to take the call," the two attorneys "corresponded via text message about Mr. Miller's arguments in favor of an unconditional writ of habeas corpus." (*Id.*)  Twenty days after the State released Petitioner from custody, counsel "was contacted by the clerk assigned to Special Judge William Acree via email and given notice of an order to appear before [him on] October 26, 2021, . . . in order to pick a trial date[.]" (*Id.*)

Petitioner argues that the State's alleged noncompliance with the conditional writ entitles him to an order,

> (1) Find[ing] that the State's bad faith conduct has prejudiced [him] such that the State is prohibited from re-arresting or retrying [him] for any alleged crimes related to the facts underlying his now-overturned conviction; and
>
> (2) Enjoin[ing] the State from setting a third state court trial date . . . and bar[ring] the State from re-prosecuting [him] in this case;
>
> (3)  Expung[ing] [his] conviction; and
>
> (4)  Grant[ing] [him] an unconditional writ of habeas corpus.

(ECF No. 70 at 9.)

Respondent filed a response to the motion and an affidavit from District Attorney General Agee.  (ECF No. 75 & 75-1.)  Respondent argues that the State complied with the conditional writ by releasing Miller on September 10, 2021.  He also maintains that the State did not act in bad faith when it filed its notice of intent.  Referring to Agee's affidavit, Respondent argues that "after the notice was filed, and before the 120-day period expired, the District Attorney General's office took steps to bring the case to trial." (ECF 75 at 4.)  Upon review of

5

the affidavit, the Court found that although Agee described the steps undertaken by his office to re-prosecute Petitioner, he did not indicate which of those activities occurred prior to September 10, 2021. The Court therefore directed Respondent to file a supplemental affidavit providing that information. (ECF No. 76.)

In his supplemental affidavit, which was filed on December 14, 2021, District Attorney General Agee avers that he and his office took significant steps to investigate and "commence the prosecution of petitioner's case" both prior to and after the filing of the notice of intent on June 11, 2021, and before the expiration of the 120-day period on September 10, 2021. (ECF No. 77-1 at 2.) Specifically, Agee "and other prosecutors in [his] office began discussing how to proceed in this matter in May 2021 after [the] Court issued its order granting the petitioner a conditional writ of habeas corpus." (*Id.* at 1.) Also in May 2021, Agee "informed the trial court that the case was remanded and that there was likely to be a conflict because the trial court had served as a prosecutor in the prior trial." (*Id.*) Sometime "[i]n the summer of 2021," Agee "began reviewing the transcripts from the petitioner's prior trial proceedings." (*Id.* at 2.) In his "office's investigation in this matter," prosecutors spoke with Shawn Williams, a witness from the trial, who informed them that seven other "witnesses . . . are unavailable because they are deceased." (*Id.* at 1.) His team "engaged in internal discussions about how to proceed with witnesses being unavailable."[3] (*Id.* at 2.) According to Agee, "[b]oth the conversations with Mr. Williams and the[] internal discussions occurred prior to September 10, 2021." (*Id.*) Also prior to that date, his "office . . . learned . . . that [another] important witness for the State . . . is believed to be in the Federal Witness Protection Program and it is undetermined . . . whether she

---

[3] According to Agee, the lapse of time also affected institutional memory. (*See* (ECF No. 75-1 at 1 ("No one currently working in the District Attorney's Office was employed at [that] office in 1996, when the petitioner first went to trial.")).)

is also deceased." (*Id.*)  His "office initiated the process to have a new trial judge appointed to hear the case prior to September 10, 2021." (ECF No. 77-1 at 2.)  Agee attests that he and attorney Working "engaged in plea negotiations, procedural issues and discussions about resolving the case" prior to September 10, 2021. (*Id.*)

Conditional writs of habeas corpus "are essentially accommodations accorded to the state. They represent a [habeas] court's holding that a[n] . . . infirmity justifies petitioner's release. The conditional nature of the order provides the state with a window of time within which it might cure . . . the error." *Satterlee v. Wolfenbarger*, 453 F.3d 362, 369 (6th Cir. 2006) (citation and internal quotation marks omitted).  "[T]he sole distinction between a conditional and an absolute grant of the writ of habeas corpus is that the former lies latent unless and until the state fails to perform the established condition, at which time the writ springs to life." *Gentry v. Deuth*, 456 F.3d 687, 692 (6th Cir. 2006).  "A federal district court retains jurisdiction to determine whether a party has complied with a conditional order." *Id.* (quoting *Satterlee v. Wolfenbarger,* No. 03–71682–DT, 2005 WL 2704877, at *2 (E.D. Mich. Oct. 19, 2005) (internal citations omitted) (vacating petitioner's conviction), *aff'd in part,* 453 F.3d 362 (6th Cir. 2006)).

The habeas statute provides that a court may provide relief "as law and justice require." 28 U.S.C. § 2243.  In exercising that broad authority, a district court may bar the state's re-prosecution of the petitioner. *See Satterlee*, 453 F.2d at 370.  However, in cases where the constitutional violation can be remedied by a retrial,[4] "the state is not precluded from rearresting petitioner and retrying him under the same indictment." *Id.* (quoting *Fisher v. Rose*, 757 F2d 789, 791 (6th Cir. 1985)).  That is generally true even if the "prisoner is released because a state fails to retry the prisoner by the deadline set in a conditional writ." *Id.* (citing *Fisher*, 757 F.2d at

---

[4] In Miller's case, the state court's error in redacting portions of Kathy Blackwell's testimony can be remedied by a retrial.

7

791); *see also Girts v. Yanai*, 600 F.3d 576, 578 (6th Cir. 2010) (affirming "the district court's decision not to bar a pending third trial following the state's failure to retry Petitioner within the time provided by [the] conditional grant of a writ of habeas corpus").  Nevertheless, a re-prosecution bar may be imposed "in extraordinary circumstances, such as when the state inexcusably, repeatedly, or otherwise abusively fails to act within the prescribed time period or if the state's delay is likely to prejudice the petitioner's ability to mount a defense at trial[.]" *Satterlee*, 453 F.3d at 370 (internal quotation marks and citation omitted); *see also Scott v. Bock*, 576 F. Supp. 2d 832, 837 (E.D. Mich. 2008), *aff'd sub nom*. *Scott v. Michigan State*, 359 F. App'x 579 (6th Cir. 2009) ("As the term 'extraordinary' implies, courts should award relief in the form of barring reprosecution sparingly, reserving this drastic remedy for the most outrageous cases where the prisoner languishes behind prison bars while the State remains passive in the face of accumulating prejudice to the petitioner.")

Miller has not demonstrated that Respondent failed to comply with the conditional writ. It is undisputed that the State released Miller from custody on September 10, 2021.  That action was in compliance with the terms of the conditional writ and ended Petitioner's custody under an unconstitutional conviction.  To be sure, the State "has suffered no practical consequence from its failure to prosecute [Petitioner] within [120] days." *Girts*, 600 F.3d at 585.  But that does not change the fact that the State complied with the conditional writ. *See id.* ("[T]he failure to retry Petitioner within 180 days was not a violation of the conditional writ.  The conditional writ clearly provide[d] that Respondent could either retry him or release him, and Petitioner was released once the district court determined that Respondent was out of time.").

Miller's argument that the State did not comply with the writ because it, allegedly, filed its notice of intent without actually intending to begin a retrial within the 120-day period,

8

proposes a strained reading of the conditional writ and Respondent's obligations under it. The conditional writ gave Respondent the option of filing, by the 30th day, a notice of intent to retry Petitioner. Respondent did so within the time prescribed. The plain language of the conditional writ does not support the notion that, in filing its notice, the State assumed the risk that it would forever forfeit the opportunity to retry Petitioner if it failed to take some unspecified number of steps toward commencing a retrial by September 10, 2021. If the Court had intended as much, it would have said so explicitly in the order. That being said, the State was nevertheless held to account by the 120-day deadline, which served as the backstop against *extended* incarceration. Although it may be of little solace to Petitioner, who believes that the State's bad faith caused him to be incarcerated an additional ninety to 120 days, that protection functioned as intended when, upon the State's failure to begin a retrial by September 10, 2021, it released him from custody.

But even accepting Petitioner's invitation to assess the State's intentions, the steps taken by the prosecutors both prior to the filing of the notice of intent on June 11, 2021, and before the expiration of the 120-day deadline on September 10, 2021, do not suggest that the State acted in bad faith in filing the notice.[5] District Attorney General Agee has not disputed attorney Working's averment that Agee told him that the case was not a high priority and that he intended on keeping Petitioner in jail as long as possible. To be sure, Agee's comments are "troubling." *Girts*, 600 F.3d at 585. Nevertheless, Agee's actions and those of his team do not paint a picture of prosecutorial indifference. Upon the issuance of the conditional writ in May 2021, the prosecutors discussed how to proceed. That summer, Agee reviewed the trial transcripts and notified the trial court that the judge had a potential conflict of interest. His office investigated

---

[5]   A hearing is not needed to determine what steps were undertaken by the State because Working and Agee's affidavits do not contradict each other in any material respect.

9

the availability of witnesses and had internal discussions about how to proceed in light of the death of numerous witnesses. Those investigations and discussions took place before September 10, 2021. Also prior to that date, Agee and Working had discussions about procedural issues and a plea deal. At bottom, the conduct of the State's prosecutors do not support a finding of bad faith.

For all of the above-stated reasons, the Court finds that Respondent complied with the conditional writ. There are, thus, no grounds for issuing any of the relief Petitioner requests.[6]

That being said, it bears noting that there are no extraordinary circumstances in the present case that would warrant a bar on retrial. For one thing, the absence of bad faith precludes a finding that the State "abusively faile[d] to act." *Satterlee*, 453 F.3d at 370; *cf. Fisher*, 757 F.2d at 791 ("We conclude that the district court abused its discretion in barring retrial by the state" where the petitioner "was no longer being held pursuant to the constitutionally defective conviction" and where, within sixty days of the appellate court's mandate, the state took substantial steps toward retrial). What is more, the state's alleged delay in releasing Miller has not been shown "likely to prejudice [his] ability to mount a defense at trial[.]" *Satterlee*, 453 F.3d at 370. Indeed, Petitioner presents no argument in that regard. And, although ninety or 120 days' detention is no small matter to the prisoner, it is not synonymous with "languish[ing]" in prison. *Scott*, 576 F. Supp. 2d at 837. Lastly, a retrial bar is not needed to prevent Miller from being subject to double jeopardy. Although he broadly alleges that he faces such a risk, he has not developed the argument or pointed to anything in the record supporting the assertion.

---

[6] Because the State complied with the conditional writ, the Court "does not retain any further jurisdiction over the matter." *Gentry*, 456 F.3d at 692 (citing *Pitchess v. Davis,* 421 U.S. 482, 490 (1975) (per curiam)).

For all of these reasons, Petitioner's motion is **DENIED**. Although he is not entitled to the relief he requests in his motion, Miller has prevailed in this case as he has been released from custody in compliance with the conditional writ. Judgment shall therefore be entered in his favor.

**IT IS SO ORDERED**.

                                             **s/ S. Thomas Anderson**
                                             S. THOMAS ANDERSON
                                             CHIEF UNITED STATES DISTRICT JUDGE

                                             Date: April 4, 2022